No. 20-35904

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

YONAS FIKRE

Plaintiff-Appellant,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

Defendants-Appellees.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

————————————

**ANSWERING BRIEF FOR APPELLEES**
————————————

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

SCOTT ERIK ASPHAUG
*Acting United States Attorney*

SHARON SWINGLE
(202) 353-2689
JOSHUA WALDMAN
(202) 514-0236
*Attorneys, Appellate Staff*
*Civil Division, Room 7232*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C.  20530*

## Table of Contents

Page

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF THE ISSUES ............................................................1

STATEMENT OF THE CASE .................................................................2

I.      LEGAL BACKGROUND .................................................................2

        A.      The No Fly and Selectee Lists ...........................................2

        B.      DHS TRIP Redress Procedures..........................................5

II.     FACTUAL ALLEGATIONS .....................................................11

        A.      Plaintiff's Former No Fly List Status and
                District Court Complaint....................................................11

        B.      Plaintiff's Removal from the No Fly List
                and Prior Appeal ................................................................13

## Table of Contents (cont'd)

Page

C. District Court Proceedings on Remand .......................................15

1. *District Court Dismissed Plaintiff's Travel-Related No Fly List Claims as Moot*....................................................16

2. *District Court Dismissed Plaintiff's Newly Added Claims Challenging His TSDB Status for Failure to State a Claim* .........................................................17

STANDARD OF REVIEW ....................................................................22

SUMMARY OF ARGUMENT ..............................................................22

ARGUMENT ..........................................................................................26

I. PLAINTIFF'S NO FLY LIST CLAIMS ARE MOOT .............................26

A. The Government Met its Burden to Show that the Challenged Conduct Could Not Reasonably Be Expected to Recur ..............................................................28

B. Plaintiff's Claims Do Not Remain Live Because of Alleged Ongoing Reputational Harm ...........................................39

C. The District Court Lacks Subject Matter Jurisdiction Over Plaintiff's No Fly List Claims................................................44

# Table of Contents (cont'd)

Page

II.   PLAINTIFF CANNOT ESTABLISH A PROTECTED LIBERTY
      INTEREST FOR HIS PROCEDURAL DUE PROCESS
      CHALLENGE ................................................................................47

      A.   Plaintiff Cannot Establish Public Stigma Element
           of a Stigma-Plus Claim ....................................................49

      B.   Plaintiff Cannot Establish the "Plus" Element
           of a Stigma-Plus Claim ....................................................55

      C.   Plaintiff's Contrary Arguments Are Meritless............................66

CONCLUSION ........................................................................................71

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE
STATEMENT OF RELATED CASES

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## <u>Cases</u>

*Abdi v. Wray,*
    942 F.3d 1019 (10th Cir. 2019)........................................... 57, 58, 59, 62, 63

*Already, LLC* v. *Nike, Inc.,*
    568 U.S. 85 (2013) ........................................................................26

*Am. Cargo Transport., Inc.* v. *United States,*
    625 F.3d 1176 (9th Cir. 2010)........................................................28

*Ammex, Inc. v. Cox,*
    351 F.3d 697 (6th Cir. 2003)..........................................................28

*Anderson v. Carter,*
    802 F.3d 4 (D.C. Cir. 2015) ...........................................................41

*Arizonans for Official English* v. *Arizona,*
    520 U.S. 43 (1997) ........................................................................26

*Asbill v. Housing Authority of Choctaw Nation,*
    726 F.2d 1499 (10th Cir. 1984)......................................................51

*Aslin v. Financial Indus. Regulatory Auth., Inc.,*
    704 F.3d 475 (7th Cir. 2013)..........................................................41

*Bell v. City of Boise,*
    709 F.3d 890 (9th Cir. 2013)..........................................................30

# TABLE OF AUTHORITIES (cont'd)

Page(s)

**Cases**

*Beydoun v. Sessions*,
871 F.3d 459 (6th Cir. 2017).................................................................... 56, 57

*Bosnic v. Wray*,
2018 WL 3651382 (M.D. Fla. 2018)..........................................................32

*Brown v. Buhman*,
822 F.3d 1151 (10th Cir. 2016)...................................................................33

*Chappell v. Mandaville*,
706 F.3d 1052 (9th Cir. 2013).....................................................................47

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .....................................................................................38

*Clarke v. United States*,
915 F.2d 699 (D.C. Cir. 1990) (en banc) ..................................................28

*Coral Springs Street Systems, Inc. v. City of Sunrise*,
371 F.3d 1320 (11th Cir. 2004)...................................................................28

*County of Los Angeles v. Humphries*,
562 U.S. 29 (2010) .......................................................................................66

*Edny v. County of Los Angeles*,
975 F.3d 757 (9th Cir. 2020)......................................................... 48, 51, 70

# TABLE OF AUTHORITIES (cont'd)

Page(s)

**Cases**

*Elhady v. Kable,*
    993 F.3d 208 (4th Cir. 2021)................................. 4, 5, 50, 52, 54, 59, 60, 63

*Estrella v. Menifee,*
    275 F. Supp. 2d 452 (S.D.N.Y. 2003) .........................................................51

*Fikre v. FBI,*
    738 Fed. Appx. 545, 2018 WL 4537720 (9th Cir. 2018) ...........................66

*Fikre v. FBI,*
    904 F.3d 1033 (9th Cir. 2018).........................................13-15, 27-35, 43, 54

*Hart v. Parks,*
    450 F.3d 1059 (9th Cir. 2006)......................................................... 48, 64, 69

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) .........................................................................................37

*Humphries v. County of Los Angeles,*
    554 F.3d 1170 (9th Cir. 2009)............................................. 66, 67, 68, 69, 70

*In re Quality Systems, Inc. Sec. Litig.,*
    805 F.3d 1130 (9th Cir. 2017)......................................................................22

*ITT Rayonier Inc. v. United States,*
    651 F.2d 343 (5th Cir. Unit B 1981) ...........................................................38

# TABLE OF AUTHORITIES (cont'd)

<u>Page(s)</u>

## <u>Cases</u>

*Jackson v. California Dep't of Mental Health*,
  399 F.3d 1069 (9th Cir. 2005)............................................................ 41, 43

*Johnson v. Martin*,
  943 F.2d 15 (7th Cir. 1991)..........................................................................51

*Kashem v. Barr*,
  941 F.3d 358 (9th Cir. 2019)....................................... 4, 8, 35, 44, 45, 46, 47

*Kovac v. Wray*,
  449 F. Supp. 3d 649 (N.D. Tex. 2020).........................................................32

*Latif v Holder*,
  686 F.3d 1122 (9th Cir. 2012).....................................................................47

*Latif v. Holder*,
  2015 WL 1883890 (D. Or. 2015) ................................................................32

*Matar v. TSA*,
  910 F.3d 538 (D.C. Cir. 2018) ....................................................................47

*McBryde v. Committee to Review Circuit Council Conduct*,
  264 F.3d 52 (D.C. Cir. 2001) ......................................................................42

# TABLE OF AUTHORITIES (cont'd)

Page(s)

**Cases**

*McCormack* v. *Herzog,*
    788 F.3d 1017 (9th Cir. 2015)........................................................22

*Mokdad v. Lynch,*
    876 F.3d 167 (6th Cir. 2017)...................................... 31, 32, 33, 47

*R.M. Investment Co. v. U.S. Forest Serv.,*
    511 F.3d 1103 (10th Cir. 2007).....................................................41

*Ragsdale v. Turnock,*
    841 F.2d 1358 (7th Cir. 1988).......................................................28

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
    601 F.3d 1096 (10th Cir. 2010).....................................................28

*Scherfen v. DHS,*
    2010 WL 456784 (M.D. Pa. 2010)...............................................53

*Sossamon v. Lone Star State of Texas,*
    560 F.3d 316 (5th Cir. 2009)................................................ 28, 33

*Speech First, Inc. v. Killeen,*
    968 F.3d 628 (7th Cir. 2020).........................................................33

*Spencer v. Kemna,*
    523 U.S. 1 (1998) .........................................................................40

# TABLE OF AUTHORITIES (cont'd)

Page(s)

**Cases**

*Thomas v. City of Memphis,*
    996 F.3d 318 (6th Cir. 2021)..........................................................................33

*Tijerino v. Stetson Desert Project, LLC,*
    934 F.3d 968 (9th Cir. 2019)..........................................................................22

*United States v. Cotterman,*
    709 F.3d 952 (9th Cir. 2013) (en banc) ........................................................64

*United States v. Edwards,*
    498 F.2d 496 (2d Cir. 1974)...........................................................................53

*United States v. Hartwell,*
    436 F.3d 174 (3d Cir. 2006)...........................................................................53

*United States v. Skipwith,*
    482 F.2d 1272 (5th Cir. 1973)........................................................................53

*Wenger v. Monroe,*
    282 F.3d 1068 (9th Cir. 2002)............................................................... 49, 51

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000)........................................................................30

# TABLE OF AUTHORITIES (cont'd)

Page(s)

## Cases

*Wilkinson v. Austin,*
    545 U.S. 209 (2005) ......................................................................47


## Statutes

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

49 U.S.C. § 114(d) ...........................................................................2

49 U.S.C. § 114(e)(1) .......................................................................2

49 U.S.C. § 114(f)(3) ........................................................................2

49 U.S.C. § 114(h) ...........................................................................2

49 U.S.C. § 44903(j)(2)(C)(ii) ..........................................................3

49 U.S.C. § 44903(j)(2)(C)(iii)(I) .............................................. 5, 47

49 U.S.C. § 44903(j)(2)(G)(i) ................................................... 5, 47

49 U.S.C. § 44926(a) ........................................................................5

# TABLE OF AUTHORITIES (cont'd)

<u>Page(s)</u>

## <u>Statutes</u>

49 U.S.C. § 44926(b)(1) ......................................................................5

49 U.S.C. § 46110(a) ........................................................................44

49 U.S.C. § 46110(c) ........................................................................44

## <u>Regulations</u>

49 C.F.R. § 1560.105(b)(1)-(2) .........................................................4

49 C.F.R. § 1560.201 - .207............................................................ 6, 47

73 Fed. Reg. 64018 (Oct. 28, 2008) ..................................................6

## <u>Other Authorities</u>

D. Ct. Dkt. No. 56 .............................................................................12

D. Ct. Dkt. No. 131 ...........................................................................11

D. Ct. Dkt. No. 139 ...........................................................................11

D. Ct. Dkt. No. 165 .............................................................................1

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331. ER-69. The district court entered final judgment on August 12, 2020. D. Ct. Dkt. 165; ER-93. Plaintiff filed a timely notice of appeal on October 9, 2020. ER-67-68. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether plaintiff's claims for injunctive and declaratory relief from the No Fly List are moot because plaintiff was removed from the No Fly List five years ago, and subsequently provided with a declaration stating that he "was removed from the No Fly List upon the determination that he no longer satisfied the criteria for placement on the No Fly List" and "will not be placed on the No Fly List in the future based on the currently available information."

2.     Whether plaintiff's No Fly List claims should be dismissed because the district court lacked subject matter jurisdiction to hear those claims.

3.     Whether the district court correctly dismissed plaintiff's procedural due process challenge to his alleged status on the Terrorist Screening Database because plaintiff failed to establish a protected liberty interest under a stigma-plus theory or otherwise.

## STATEMENT OF THE CASE

## I.    LEGAL BACKGROUND

### A.    The No Fly and Selectee Lists

The Transportation Security Administration ("TSA"), a component agency of the Department of Homeland Security ("DHS"), ensures transportation security.  49 U.S.C. § 114(d).  The TSA Administrator is "responsible for day-to-day Federal security screening operations for passenger air transportation," and develops "policies, strategies, and plans for dealing with threats to transportation security."  *Id*. § 114(e)(1), (f)(3).

One of TSA's responsibilities is to screen airline passenger lists against subsets of the federal government's consolidated terrorist watchlist, the Terrorist Screening Database ("TSDB").  49 U.S.C. § 114(h).  The TSDB is maintained by the Terrorist Screening Center ("TSC"), a multi-agency

center administered by the FBI. SER-20. The government "continuously evaluates its standards for inclusion in the TSDB and its subset lists," SER-22, and conducts "regular[] reviews [of] data in the TSDB to ensure that the underlying information supports the nomination and * * * audits to confirm the data in the TSDB is thorough, accurate, and current," SER-24. "At any time," a government agency "that identifies new or updated information about a watchlist record may make a request to * * * modify or remove that record," including "[w]hen new information becomes available * * * that refutes or discredits the original information that supported the individual's watchlist status." SER-24-25.

The No Fly List and Selectee Lists are two subsets of the TSDB used by TSA for screening purposes. 49 U.S.C. § 44903(j)(2)(C)(ii). Individuals on the No Fly List may be prohibited by TSA from boarding a commercial aircraft. Individuals on the Selectee List are permitted to board but must undergo enhanced security screening before doing so. 49 C.F.R.

§ 1560.105(b)(1)-(2).  *See generally Kashem v. Barr*, 941 F.3d 358, 365-66 (9th

Cir. 2019); *Elhady v. Kable*, 993 F.3d 208, 214 (4th Cir. 2021); SER-20.

Enhanced security screening differs from standard screening.  "[A]ll

individuals traveling through an airport are subject to standard screening,

which includes examining luggage with a scanner and screening

individuals with a walk-through metal detector, Advanced Imaging

Technology machine, or a pat-down."  *Elhady*, 993 F.3d at 214.  "TSA is also

authorized to require additional screening of all passengers at the gate."  *Id.*

"During enhanced screening, agents again search the person, screen the

individual's property with explosives trace detection, physically

investigate the inside of any luggage, and examine the individual's

electronics (to ensure they can be powered on) and footwear."  *Id.*  "A

typical enhanced screening takes ten to fifteen minutes, though it can take

longer."  *Id.*  Enhanced screening "is a relatively common experience for

frequent airport travelers because the TSA will often randomly select

people for this screening," and "most passengers chosen for enhanced

4

screening are not in the TSDB." *Id.; see* SER-20 ("It is important to note that individuals may be subjected to additional security screening for reasons other than a match against a watchlist record. For example, passengers may be selected for random screening measures during the security screening process."); SER-23 ("Being subject to additional screening, does not necessarily mean a person is in the TSDB. * * * [A]n individual may be designated for additional screening in order to resolve a walk-through metal detector alarm, because of random selection, or for other reasons.").

### B. DHS TRIP Redress Procedures

Congress directed TSA to establish a process for individuals with travel-related difficulties to appeal No Fly and Selectee List determinations. 49 U.S.C. § 44903(j)(2)(C)(iii)(I), (j)(2)(G)(i); *see* 49 U.S.C. § 44926(a), (b)(1). Pursuant to these authorities, TSA administers the Department of Homeland Security's Traveler Redress Inquiry Program ("DHS TRIP"), which is a program through which individuals may request redress if they believe, *inter alia*, that they have been unfairly or incorrectly delayed or prohibited from boarding an aircraft as a result of TSA's watchlist

matching program.  *See* 49 C.F.R. § 1560.201 - .207; 73 Fed. Reg. 64018 (Oct. 28, 2008).  *See also* SER-25-26.

Prior to 2015, the government did not disclose an individual's status on the No Fly List or any information supporting such status.  Under DHS TRIP procedures adopted in 2015, however, a U.S. citizen or lawful permanent resident (collectively, a "U.S. person") who is denied boarding on a commercial aircraft when holding a valid airline ticket, subsequently applies for redress through DHS TRIP, and is on the No Fly List after a redress review, will receive a letter providing his or her status on the No Fly List and the opportunity to receive additional information.  If such an individual opts to receive further information, DHS TRIP will provide a second, more detailed response that will identify the specific criterion under which the individual has been placed on the No Fly List and provide an unclassified summary of information supporting the individual's No Fly List status, to the extent feasible and consistent with the national security and law enforcement interests at stake.  The second letter will also

6

provide the requester an opportunity to respond and provide relevant information concerning his or her status.

DHS TRIP then forwards the requester's response and any enclosed information to the TSC Redress Unit for consideration. Upon completion of TSC's review of everything submitted to DHS TRIP and other available information, the TSC provides DHS TRIP with a recommendation to the TSA Administrator as to whether the person should be removed from or remain on the No Fly List, and the reasons for that recommendation. DHS TRIP then provides that recommendation, along with the requester's DHS TRIP file, including all information submitted by the requester, to the TSA Administrator. The TSA Administrator, or his or her designee, will review these materials, and will issue a final order either removing the person from the No Fly List, maintaining him or her on the List, or remanding the case back to TSC with a request for additional information or clarification. If the TSA Administrator issues a final order maintaining a person on the No Fly List, the order will state the basis for the decision, to the extent

7

feasible in light of the national security and law enforcement interests at stake, and will notify the individual of the ability to seek further judicial review. *See Kashem*, 941 F.3d at 366, 391; SER-27.

For non-U.S. persons and for all individuals who are not on the No Fly List, the DHS TRIP process operates differently. If the traveler is an exact or possible match to an identity in the TSDB, the government re-evaluates the available derogatory and exculpatory information about the traveler, including any information the traveler submits, to determine whether the person continues to satisfy the criteria for inclusion, and makes any necessary corrections. When appropriate, the government will remove the traveler from the TSDB and/or one of its subsets. After the conclusion of this inquiry, DHS TRIP sends the traveler a determination letter with the results of their redress inquiry, but does not disclose whether the traveler was, or is, included in the TSDB or any underlying information upon which such status is, or may have been, based. SER-26-27.

The Government does not disclose a traveler's Terrorist Screening Database status or any information underlying that status in these circumstances because doing so could reasonably be expected to risk circumvention of the law and cause harm to national security. *See* SER-22, 27. If the Government revealed who is in the Selectee List, for example, doing so would allow terrorist groups and other wrongdoers to circumvent the purpose of that List by determining which of their potential operatives would be subject to enhanced security screening and which would not. Disclosure of Terrorist Screening Database status could also compromise ongoing counterterrorism investigations by giving members of terrorist groups the opportunity to gauge whether a particular individual is the subject of an FBI counterterrorism investigation, causing the person to alter his or her behavior, destroy evidence, take new precautions against surveillance, or change the level of any terrorism-related activity in which he or she is engaged. Terrorists could then exploit the information to piece together how their activities might go undetected.

9

Likewise, disclosure of the underlying reasons or intelligence on which a person's Terrorist Screening Database status may be based would also harm national security. Inclusion in the Terrorist Screening Database is often based on highly sensitive national security and law enforcement information including: (i) information that could tend to reveal whether an individual is or has been the subject of a counterterrorism investigation, including the basis, status, or results of the investigation, and the content of any relevant investigative files; and (ii) information that could tend to reveal whether particular sources and methods were used by the Government in a counterterrorism investigation or intelligence activity related to the individual in the Terrorist Screening Database or his or her associates. Disclosure of this information would provide adversaries with valuable insight into the specific ways in which the Government detects and prevents terrorist attacks, with potentially grave consequences for national security. Disclosure would also discourage cooperation from

sensitive sources and deter agencies from making appropriate nominations

to the Terrorist Screening Database. SER-34-39.[1]

## II. FACTUAL ALLEGATIONS

### A. Plaintiff's Former No Fly List Status and District Court Complaint

Plaintiff Yonas Fikre is a U.S. citizen. ER-27, 33. He alleged that the

government put him on the No Fly List some time prior to April 2010, ER-

28, and that in September 2011, he was denied boarding on a flight from

the United Arab Emirates ("UAE") to the United States because he was on

the No Fly List, ER-45.

In November 2013, plaintiff filed a request under DHS TRIP for

review of his status on the No Fly List. ER-48. Pursuant to procedures

then in place, the government did not confirm or deny whether plaintiff

---

[1] In this case, the district court granted the government's motion for a protective order permitting a discretionary disclosure of plaintiff's current TSDB status to plaintiff's counsel (but not plaintiff himself) as well as to the court for its *in* camera review. *See* D. Ct. Dkt. Nos. 131, 139. The government stands ready to submit that same information to this Court, pursuant to the terms of the district court's protective order, if ordered to do so by this Court.

was on the No Fly List, but informed him that no changes or corrections were warranted at that time.  ER-48.

In January 2015, the government advised the district court of the newly adopted DHS TRIP procedures (*see supra* at 6-8) and its intention to reassess plaintiff's DHS TRIP application under the new procedures.  *See* D. Ct. Dkt. No. 56 (Jan. 13, 2015).  DHS TRIP informed plaintiff that he was on the No Fly List because he had been identified as an individual who may be a threat to civil aviation or national security.  DHS TRIP did not provide additional information about the reasons for plaintiff's placement on the No Fly List because additional disclosures would risk harm to national security and jeopardize law enforcement activities.  Plaintiff denied that he was or is a threat, but TSA's final determination in March 2015 stated that plaintiff would remain on the No Fly List.  ER-49-50; *see* SER-3-4.

In his district court complaint, and as relevant here, plaintiff contends that his No Fly List status violated his substantive and procedural due

12

process rights.  SER-81-86.  He seeks declaratory and injunctive relief only.
SER-86-89.

    B.    <u>Plaintiff's Removal from the No Fly List and Prior Appeal</u>

On May 9, 2016, the government filed a notice with the district court
stating that plaintiff had been removed from the No Fly List.  SER-6-7.
Plaintiff acknowledged that on May 15, 2016, he successfully boarded a
flight from Portland, Oregon to San Diego, California.  SER-11.  Following
plaintiff's removal from the No Fly List, the district court dismissed as
moot plaintiff's claims challenging his No Fly List status.

This Court reversed and remanded.  The Court observed that under
the voluntary cessation doctrine, a claim is not moot unless "there is no
reasonable expectation * * * that the alleged violation will recur," and the
Court asks "whether the government's new position could be easily
abandoned or altered in the future."  *Fikre v. FBI*, 904 F.3d 1033, 1037-38
(9th Cir. 2018).  While there is "no bright-line rule for application of the
voluntary cessation doctrine * * * a claim is not moot if the government
remains practically and legally free to return to its old ways despite

abandoning them in the ongoing litigation." *Id.* at 1039 (alterations omitted).

With respect to plaintiff's case, the Court noted that the government determined as late as March 2015 that plaintiff should remain on the No Fly List, but then removed him from the No Fly List "just * * * fourteen months" later (in May 2016) just "two months after briefing was completed on the government's motion to dismiss Fikre's lawsuit." *Fikre*, 904 F.3d at 1040. The Court found that this timing "suggests that Fikre's removal from the No Fly List was more likely an exercise of discretion than a decision arising from a broad change in agency policy or procedure." *Id.*

"Moreover," this Court reasoned, "the government has not assured Fikre that he will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place, nor has it verified the implementation of procedural safeguards conditioning its ability to revise Fikre's status on the receipt of new information." *Fikre*, 904 F.3d at 1040.

14

Finally, the Court stated that "[a]bsent an acknowledgment by the government that its investigation revealed Fikre did not belong on the list, and that he will not be returned to the list based on the currently available evidence," plaintiff "remains * * * stigmatized" by his former No Fly List status. *Fikre*, 904 F.3d at 1040. Because "the government has not executed a declaration to th[e] effect" that plaintiff will not be placed back on the No Fly List based on the currently available information, there are no "procedural hurdles to reinstating Fikre on the No Fly List based solely on facts already known," and thus "the voluntary cessation doctrine applies" and plaintiff's No Fly List challenges were not moot. *Id.* at 1040-41.

C.  <u>District Court Proceedings on Remand</u>

On remand, the government filed the declaration this Court noted was lacking in the prior appeal. Specifically, the government filed a declaration from TSC's Acting Deputy Director for Operations stating that "Plaintiff was removed from the No Fly List upon the determination that he no longer satisfied the criteria for placement on the No Fly List" and

that "[h]e will not be placed on the No Fly List in the future based on the currently available information."  ER-66.

> 1. *District Court Dismissed Plaintiff's Travel-Related No Fly List Claims as Moot*

The district court held that "[i]n light of Defendants' declaration that Mr. Fikre would not be returned to the No Fly List based on any 'currently available information,' * * * Mr. Fikre's due process claims * * * d[o] not present a live case or controversy" because "Defendants ha[ve] met their burden under the voluntary cessation doctrine as laid out by the Ninth Circuit's decision in this case."  ER-4 & n.6; SER-96 & n.6.  However, the district court held that plaintiff's due process claims were moot only "insofar as they were based on a theory of present or future injury to a travel-related liberty interest" but plaintiff's due process claims were not moot with respect to any asserted "reputational injury."  ER-4; SER-96.

Nonetheless, the district court noted, plaintiff's sixth amended complaint "did not sufficiently allege a cognizable reputational injury."

ER-4; SER-96.  The district court granted plaintiff leave to file a seventh

amended complaint in order to do so.  ER-4; SER-96.

> 2.   *District Court Dismissed Plaintiff's Newly Added Claims*
> *Challenging His TSDB Status for Failure to State a Claim*

Plaintiff's seventh amended complaint added "approximately forty

new paragraphs of allegations" focusing on two flights plaintiff had taken

in 2016, one to Mecca and one to San Diego, in which plaintiff alleged that

"the Government stigmatized him (and thus injured his reputation) by

subjecting him to repeated, non-random, intensive security screening in

front of his co-travelers, which led those co-travelers to believe that the

Government suspected Mr. Fikre of being a terrorist."  SER-97 (citing SER-

69, 72-81).  Although plaintiff "was no longer on the No Fly List at the time

of the two 2016 trips," plaintiff alleged that "he remained a listee on the

TSDB subject to non-random, intensive screenings at airports * * * because

of his TSDB status."  SER-97.  Thus, the district court understood "Mr.

Fikre's reputational allegations [as] concern[ing] his alleged TSDB status,

not his No Fly status."  SER-102.  *See also* SER-100-101 (plaintiff's "injured

17

reputation" allegedly caused by "Defendants' * * * listing Mr. Fikre in the TSDB" because "it is plausible that despite being removed from the No Fly List, Mr. Fikre remained a listee of the TSDB subject to intensive screening when traveling through airports").

The district court dismissed plaintiff's substantive due process challenge to his alleged TSDB status because he "alleges no facts that show 'conscience shocking' behavior by Defendants that resulted in the deprivation of a reputational liberty interest."  SER-104.

The district court dismissed plaintiff's procedural due process challenge to his alleged TSDB status because he failed to establish a protected liberty interest predicated on a "stigma-plus" theory.  SER-105. While the court agreed that plaintiff sufficiently alleged stigma, SER-107, it held that plaintiff failed to allege a deprivation of a legal right sufficient to qualify as a plus for his stigma-plus claim, SER-108-109.

Plaintiff asserted various deprivations of legal rights that he claimed would qualify as a plus – such as torture by the UAE government; the

denial of boarding; a criminal indictment; surveillance allegedly in violation of the Fourth Amendment; interference with his religious beliefs; allegedly onerous screening at airports; searches of electronic devices at the border; and loss of access to employment and credentials. SER-108. The district court rejected each purported deprivation for multiple, and sometimes overlapping, reasons.

To begin with, under Circuit precedent, the plaintiff must show that his reputational injury caused the denial of a federally protected right, or was inflicted in connection with such a deprivation. SER-108-109. The plaintiff did not argue that his reputational injury caused the denial of any protected right, SER-109, and the district court held that many of plaintiff's claimed deprivations were not inflicted in connection with the asserted reputational harm either. As the court noted, "[t]he most straightforward example of an 'in connection with' stigma-plus claim" involves a reputational injury and deprivation of a right "caused by the same set of actors," that "occur in close temporal proximity, and arise out of the same

set of circumstances." SER-109. But plaintiff's allegations concerning torture by UAE police in 2011, unlawful surveillance of his communications in 2010, his criminal indictment in 2013, and his denial of boarding in 2011, all "occurred well before the 2016 trips" where the asserted reputational harm occurred. SER-109. Because plaintiff's "'plus' theories" had "absolutely nothing to do with the events of Mr. Fikre's 2016 reputational injury" and "they involve different actors, they occurred years apart * * * and happened for a host of possible reasons," the court held that plaintiff had failed to show that his alleged reputational harm was inflicted in connection with any of these alleged deprivations. SER-113.

The court also held that plaintiff's alleged deprivations failed because the TSDB process plaintiff challenged "creates no scheme – either formally or informally – which purposefully subjects a TSDB listee to" the UAE torture, unlawful surveillance, or criminal indictment that he alleges in his complaint. SER-112.

The district court rejected other purported pluses – such as the denial of employment or credentials from federal agencies – because plaintiff "has not alleged that he has personally suffered any of these consequences." SER-113.

In addition, the court held that some of plaintiff's purported pluses did not adequately allege any deprivation of a protected right. For example, the court noted that it had previously dismissed plaintiff's torture and unlawful surveillance claims as "speculative" and vague, SER-111 n.11, and thus plaintiff had failed to allege any deprivation on those grounds. Similarly, plaintiff's previous indictment could not serve as a plus because plaintiff does not allege that the indictment was anything other than duly-issued. SER-113 n.12.

Finally, the district court held that "significant security screening" at the airport because of plaintiff's alleged TSDB status cannot constitute the plus in his stigma-plus claim, because "the level of extra screening he

received does not implicate a travel-related interest which suffices to constitute a 'plus' factor." SER-113-114.

## STANDARD OF REVIEW

This Court reviews *de novo* whether plaintiff's claim is moot, *McCormack* v. *Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015), whether the district court lacked subject matter jurisdiction, *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 (9th Cir. 2019), and whether the district court properly dismissed for failure to state a claim, *In re Quality Systems, Inc. Sec. Litig.*, 805 F.3d 1130, 1140 (9th Cir. 2017).

## SUMMARY OF ARGUMENT

I. Plaintiff's claims for injunctive and declaratory relief from the No Fly List are moot. Plaintiff was removed from the No Fly List five years ago. He was subsequently provided with a declaration stating that plaintiff "was removed from the No Fly List upon the determination that he no longer satisfied the criteria for placement on the No Fly List" and that "[h]e will not be placed on the No Fly List in the future based on the currently available information." Furthermore, plaintiff acknowledges that

22

he boarded two flights – one domestic, and one international – since his removal from the No Fly List, and he concedes that his request for an order removing him from the No Fly List is moot.

This case now stands in an entirely different factual posture than it did in the prior appeal in which this Court held that plaintiff's No Fly List claims were not moot. Plaintiff's removal may have seemed tentative at that time, given its recent vintage, following the government's decision just 14 months earlier to maintain plaintiff on the No Fly List, and coming on the heels of a motion to dismiss. But the timing now – the government removed plaintiff from the No Fly List five years ago – reinforces the conclusion that the challenged status is not likely to recur. Moreover, the government has provided plaintiff with the very declaration lacking in the first appeal, assuring him that he no longer meets the criteria for inclusion on the No Fly List and will not be put on the No Fly List in the future based on the currently available information. This case is now factually indistinguishable from a Sixth Circuit case holding that a plaintiff's No Fly

23

List claims for prospective relief were moot following his removal from the List and a similar declaration.

Plaintiff's No Fly List claims do not remain live because of alleged reputational harm. First, the district court found that plaintiff's complaint alleged reputational harm only with respect to two flights in 2016 after he was removed from the No Fly List; accordingly, any claim of reputational harm relates only to plaintiff's alleged status on the TSDB, not to the No Fly List. Regardless, where a claimed reputational injury is the lingering effect of any otherwise moot claim, the allegation of reputational harm does not avoid mootness.

Even if plaintiff's No Fly List claims remained live, this Court can affirm on the alternative ground that the district court lacked subject matter jurisdiction over those claims. As this Circuit has recognized, the courts of appeals have exclusive jurisdiction to hear a plaintiff's substantive due process challenge to his No Fly List brought after exhausting the revised

2015 redress procedures, and a district court lacks jurisdiction to reach that claim. The same logic applies to plaintiff's procedural due process claim.

II. Plaintiff's procedural due process challenge to his alleged inclusion on the TSDB was properly dismissed as well, because plaintiff cannot establish either element of a stigma-plus claim.

Plaintiff cannot show stigma, because – as the Fourth Circuit recently held – TSDB status is not publicly disclosed and dissemination within government law enforcement agencies, or to private entities exercising a law-enforcement or national-security function, does not qualify as publicly stigmatizing. Nor, as numerous circuits have held, is there any stigma in being publicly searched at an airport, which many travelers experience on a random basis.

Plaintiff also fails to show the plus in his stigma-plus claim. Three circuits are in agreement that enhanced security screening at airports, or secondary inspection at border crossings, do not constitute a plus for a stigma-plus claim, because they are relatively minor burdens broadly

experienced by many travelers for reasons unrelated to any watchlist

status. Other purported deprivations do not qualify as a plus either,

because they bear no connection to plaintiff's asserted reputational injury,

because plaintiff did not allege that he personally experienced any such

deprivation, and/or because plaintiff did not allege facts to demonstrate a

deprivation of any legal right or status.

## ARGUMENT

## I. PLAINTIFF'S NO FLY LIST CLAIMS ARE MOOT

"A case becomes moot – and therefore no longer a 'Case' or

'Controversy' for purposes of Article III – when the issues presented are no

longer 'live' or the parties lack a legally cognizable interest in the

outcome." *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 91 (2013). Even if there is

a live controversy when the case is filed, a claim becomes moot if "the

requisite personal interest that must exist at the commencement of the

litigation" is no longer present. *Arizonans for Official English* v. *Arizona*, 520

U.S. 43, 67-68 & n.22 (1997).

26

It is undisputed that the government removed plaintiff from the No Fly List in 2016, ER-65-66; SER-6, and that plaintiff has since boarded at least two flights, SER-72-79. The government also provided a declaration stating that "Plaintiff was removed from the No Fly List upon the determination that he no longer satisfied the criteria for placement on the No Fly List" and "will not be placed on the No Fly List in the future based on the currently available information." ER-66. Accordingly, plaintiff concedes that his claim for injunctive relief, seeking an order removing him from the No Fly List, is moot. Plaintiff's Brief ("Pls. Br.") 7; *Fikre*, 904 F.3d at 1036.

Plaintiff nonetheless argues that he has a live claim for a declaratory judgment that his prior No Fly List status was unlawful. Plaintiff argues that this claim is not moot because, under the voluntary cessation doctrine, the government has not met its burden to show that his No Fly List status could not reasonably be expected to recur. Alternatively, plaintiff contends that his No Fly List challenge remains live because he suffers ongoing

reputational harm as a result of his former status on the No Fly List.  Both

arguments are meritless.

### A.   The Government Met its Burden to Show that the Challenged Conduct Could Not Reasonably Be Expected to Recur

This Court previously held that "the mere announcement that Fikre

was removed from the list falls short of meeting the government's burden"

to make it "absolutely clear the allegedly wrongful behavior could not

reasonably be expected to recur." *Fikre*, 904 F.3d at 1039.  But this case is

now in an entirely different factual posture than existed at the time of the

prior appeal.[2]

---

[2] Plaintiff does not dispute that "[t]he government's change of policy presents a special circumstance in the world of mootness," because "unlike in the case of a private party, we presume the government is acting in good faith." *Am. Cargo Transport., Inc.* v. *United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (collecting cases reflecting this "principle of deference").  *Accord Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1117 (10th Cir. 2010); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009); *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004); *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003); *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988).

To begin with, in the prior appeal this Court emphasized the length of time plaintiff had alleged he was on the No Fly List, and the relatively recent vintage and timing of his removal. The Court noted that plaintiff alleged he had been on the No Fly List "for approximately five years," and that the government had twice determined (in 2013, and again in March 2015) that plaintiff should remain on the No Fly List. *Fikre*, 904 F.3d at 1040. However, "just * * * fourteen months" later (in May 2016), and a mere "two months after briefing was completed on the government's motion to dismiss Fikre's lawsuit," the government removed plaintiff from the No Fly List. *Fikre*, 904 F.3d at 1040. The Court found that "[t]his record" relating to the timing of the government's decision "suggest[ed] that Fikre's removal from the No Fly List was more likely an exercise of

---

Contrary to plaintiff's contention, Pls. Br. 14, 24-27, the district court expressly acknowledged the difference between standing and mootness, and placed the burden under the voluntary cessation doctrine on the government. SER-96 n.6.

discretion than a decision arising from a broad change in agency policy or procedure." *Id.*

The factual posture is now quite different. Plaintiff was removed from the No Fly List more than five years ago. There is no suggestion in the record that he has been put back on the No Fly List; to the contrary, plaintiff concedes that he has flown twice since he was removed from the No Fly List. In *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000), this Court acknowledged that a defendant's reversal of the challenged action that "had been in effect for only a month" may "become entrenched" as the litigation progresses, and thus moot a plaintiff's claim. And this Court subsequently held that a defendant's reversal of the challenged action, which was "unequivocal in tone" and "in place for more than five years," supported the conclusion that challenged conduct "could not reasonably be expected to recur." *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013). The same conclusion applies here: plaintiff's removal from the No Fly List is now five years old – equal to the time plaintiff alleges he was on the No

Fly List in the first instance. What may have appeared in the prior appeal to have been a "tentative[]" discretionary decision is now more clearly an "entrenched" agency action. *Fikre*, 904 F.3d at 1038.

Moreover, this Court previously emphasized that "the government has not assured Fikre that he will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place, nor has it verified the implementation of procedural safeguards conditioning its ability to revise Fikre's status on the receipt of new information." *Fikre*, 904 F.3d at 1040. The government has now done exactly that, by providing plaintiff a declaration stating that "Plaintiff was removed from the No Fly List upon the determination that he no longer satisfied the criteria for placement on the No Fly List" and "[h]e will not be placed on the No Fly List in the future based on the currently available information." ER-66.

*Mokdad v. Lynch*, 876 F.3d 167 (6th Cir. 2017), is thus squarely on point. There, as here, the government provided a "declaration that [the

plaintiff] is not on the No Fly List and will not be placed on that list based on currently available information." *Id*. at 168. The court held that the government's "declaration had resolved the only claim before the court," and because "there was no live case or controversy," the No Fly List claims were "properly dismissed" as moot. *Id*. at 170.[3] Indeed, in the prior appeal in this case, this Court distinguished *Mokdad* precisely because "the government has not executed a declaration to that effect." *Fikre*, 904 F.3d at 1040. Now that the government has done so, plaintiff's No Fly List claims are moot, and *Mokdad* cannot be distinguished from the instant case.[4]

Plaintiff argues (Pls. Br. 16) that the declaration is insufficient to carry the government's burden because it is not a "procedural hurdle[] to reinstating Fikre on the No Fly List based solely on facts already known." *Fikre*, 904 F.3d at 1041. But the government's declaration provides the

---

[3] *Accord Kovac v. Wray*, 449 F. Supp. 3d 649, 652, 655-56 (N.D. Tex. 2020); *Bosnic v. Wray*, 2018 WL 3651382 at *3-*5 (M.D. Fla. 2018); *Latif v. Holder*, 2015 WL 1883890 at *1-*2 (D. Or. 2015).

[4] The same mootness issue is currently pending in *Long v. Pekoske*, 4th Cir. No. 20-1406.

assurance that the government is not "practically and legally free to return to its old ways," *Fikre* at 904 F.3d at 1039. And as several courts have held, such a declaration can satisfy the government's burden to show that the challenged conduct could not reasonably be expected to recur. *Thomas v. City of Memphis*, 996 F.3d 318, 326 (6th Cir. 2021); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 646 (7th Cir. 2020) (affidavit); *Mokdad*, 876 F.3d at 170; *Brown v. Buhman*, 822 F.3d 1151, 1170 (10th Cir. 2016); *Sossamon*, 560 F.3d at 324-25 (affidavit).

Nor is the declaration vague. Despite plaintiff's professed confusion about the meaning of "currently available information," Pls. Br. 17, the declaration makes it clear that the government will not "reinstat[e] Fikre on the No Fly List based solely on facts already known." *Fikre*, 904 F.3d at 1041. And because the currently available information necessarily subsumes the information known to the government at the time plaintiff was previously placed and maintained on the No Fly List, the declaration also makes it clear that "Fikre * * * will not be banned from flying for the

same reasons that prompted the government to add him to the list in the first place." *Id.* at 1040. Further, the declaration's statement that plaintiff will not be placed back on the No Fly List based on the currently available information makes plain that the government's "ability to revise Fikre's status" on the No Fly List is "conditioned" on "the receipt of new information." *Id.* at 1040.

Plaintiff asserts that notwithstanding the government's declaration, his claims are not moot unless the government explains the reasons for his change in status. Pls. Br. 18. But the government *did* explain in its declaration that plaintiff was removed from the No Fly List "upon the determination that he no longer satisfied the criteria for placement on the No Fly List." ER-66. Any further discussion of plaintiff's prior No Fly List status and the reasons for his removal would necessarily center around classified or otherwise privileged information withheld for national security reasons, and this Court has held that the government may properly withhold classified information in the context of its No Fly List

34

redress procedures. *Kashem*, 941 F.3d at 383-88. Plaintiff points to no case (Pls. Br. 20-21, 24) in which the government was required to explain the reasons for reversing the challenged action by revealing classified or otherwise privileged evidence in order to satisfy its burden under the voluntary cessation doctrine. Nor does mootness invariably require such an explanation. *Fikre*, 904 F.3d at 1039 ("no bright-line rule").

Plaintiff similarly argues that that his claims are not moot unless the government "repudiates" his prior No Fly List status. Pls. Br. 16. As noted above, however, there is no such invariable requirement for demonstrating mootness. While this Court previously noted that "the government has not repudiated the decision to add Fikre to the No Fly List," *Fikre*, 904 F.3d at 1040, it also stressed that "there is no bright-line rule for application of the voluntary cessation doctrine," *id.* at 1039. Furthermore, this Court noted that "the government's unambiguous renunciation of its past actions can compensate for the ease with which it may relapse into them," *id.* at 1039, but here the government's declaration already makes it clear that plaintiff's

No Fly List status will not "relapse," because it states that plaintiff "no longer satisfied the criteria for placement on the No Fly List" and "will not be placed on the No Fly List in the future based on the currently available information," ER-66.

Plaintiff errs in suggesting that the government must go beyond that assurance and declare that plaintiff should not have been placed on the No Fly List even in the past, based on the information available to the government at that time. No Fly List decisions are highly fact-dependent assessments, based on the predictive judgments of executive branch experts trained in the field. Those assessments are predicated on the information available to the government at that time, and that information is continually updated and revised and can, at any time, lead to the revision of a person's status, including removal from the No Fly List based on new information. *See supra* at 2-3. The government need not "repudiate" a No Fly List decision made years ago, based on a different set of information, in order to demonstrate that plaintiff's No Fly List status

36

could not reasonably be expected to recur today based on the information currently available to the government. Nor is it clear what decision plaintiff would require the government to "repudiate" – the original decision to put him on the No Fly List (which plaintiff alleges occurred more than a decade ago) based on the information available at that time? The decision to maintain him on the No Fly List in 2013 upon his first DHS TRIP request, based on the information available at that time? The decision to maintain him in 2015, when the government reevaluated plaintiff's DHS TRIP request under the newly revised procedures? Or plaintiff's maintenance on the No Fly List after that point up to his removal from the No Fly List in May 2016? And any such judicial review would entail giving deference to the executive branch's assessment because of the "sensitive and weighty interests of national security" involved, and the judiciary's comparative "lack of competence" in that area. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010).

Finally, plaintiff contends that he might be put back on the No Fly List in the future based on some new information that might come to light. Pls. Br. 19. Such a claim is entirely speculative, and in any event – because of the government's declaration – it would necessarily be based on a new factual record, and predicated on a new final agency decision. Plaintiff cannot state a live claim in the current litigation based upon the theoretical possibility of future government action based on a different factual record. *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 (5th Cir. Unit B 1981) ("the threat of future listing * * * is too speculative to overcome mootness" because it requires both new intervening facts and new government action, and thus is "two steps removed from reality"). Nor would plaintiff have standing to seek prospective relief based on a threatened future injury that is not "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Of course, should such a new No Fly List designation come to pass in the future based on new information, plaintiff would be free to

bring a new claim, but that possibility does not affect the mootness of the

No Fly List claims presented here.

**B.** **Plaintiff's Claims Do Not Remain Live Because of Alleged Ongoing Reputational Harm**

Plaintiff suggests that his No Fly List claims are not moot because he

allegedly suffers an ongoing reputational injury as a result of his former No

Fly List status.  Pls. Br. 24-27.  But as the district court noted, the only

allegations of reputational injury in plaintiff's seventh amended complaint

concerned two flights plaintiff had taken in 2016, *after* the government had

removed him from the No Fly List.  SER-97.  Accordingly, "Mr. Fikre's

reputational allegations concern his alleged TSDB status, not his No Fly

status."  SER-102.  *See also* SER-100-101 (plaintiff's "injured reputation"

allegedly caused by "Defendants' * * * listing Mr. Fikre in the TSDB"

because "it is plausible that despite being removed from the No Fly List,

Mr. Fikre remained a listee of the TSDB subject to intensive screening when

traveling through airports"); SER-112 ("The only reputational injury for

which Mr. Fikre has established standing is the 2016 reputational injury he

allegedly suffered as a result of the Mecca and San Diego trips.  At the time

of that injury, Mr. Fikre was not on the No Fly List."); Pls. Br. 30 (alleging

plaintiff experienced reputational harm when "he has traveled by air *since*

*the Government removed him from the No Fly List*") (emphasis added).

Because plaintiff's complaint does not allege any reputational harm from

his former No Fly List status, those allegations do not provide any basis for

keeping his No Fly List claims live.

Even if plaintiff had alleged ongoing reputational harm from his

former No Fly List status, he could not avoid mootness on that basis.  In

*Spencer v. Kemna*, 523 U.S. 1, 16 n.8 (1998), the Supreme Court held that an

inmate's challenge to an order revoking his parole was mooted when he

completed the entire term of his imprisonment, and rejected the inmate's

argument that his "interest in vindicating [his] reputation [was]

constitutionally sufficient to avoid mootness."  Following *Spencer*, several

courts have held that "where reputational injury is the lingering effect of an

otherwise moot aspect of a lawsuit, no meaningful relief is possible and the

injury cannot satisfy the requirements of Article III." *Anderson v. Carter*, 802 F.3d 4, 11 (D.C. Cir. 2015). *See Jackson v. California Dep't of Mental Health*, 399 F.3d 1069, 1075 (9th Cir. 2005) ("The Supreme Court has consistently held that reputation is not a sufficient interest to avoid mootness."); *Aslin v. Financial Indus. Regulatory Auth., Inc.*, 704 F.3d 475, 477-79 (7th Cir. 2013) (plaintiff's challenge to his inclusion on a list of securities brokers who had worked at disciplined firms was mooted by his removal from the list despite a claim of "lingering harm" to "his name" caused by "the stigma" of his prior inclusion); *R.M. Investment Co. v. U.S. Forest Serv.*, 511 F.3d 1103, 1108 (10th Cir. 2007) ("the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review").

Plaintiff's No Fly List claims do not evade mootness based on any asserted reputational consequences from his former status, because any such stigma would be a mere secondary or collateral effect of an otherwise moot action. This is not a case in which the challenged action remains live

41

because, by its very nature, it involves a "public reprimand" and "explicit condemnation[]" of the plaintiff based a public report accusing the plaintiff of a "pattern of abusive behavior." *McBryde v. Committee to Review Circuit Council Conduct*, 264 F.3d 52, 54-55, 57-58 (D.C. Cir. 2001) (addressing Judicial Council report that judge engaged in a pattern of abusive behavior that was prejudicial to the effective and expeditious administration of the business of the courts). The No Fly List is not a public reprimand or explicit condemnation, but results only in the denial of boarding. While plaintiff might contend that the denial of boarding has a secondary effect on his reputation, "where an effect on reputation is a *collateral* consequence of a challenged sanction, it is insufficient to support standing or, presumably, to escape mootness." *Id.* at 57. Rather, "when injury to reputation is alleged as a secondary effect of an otherwise moot action," the plaintiff must allege "that some tangible, concrete effect remain[s]," *id.* at 57-58, which is lacking here because there are no tangible, concrete effects remaining from plaintiff's former No Fly List status.

42

In the prior appeal, this Court "note[d]" plaintiff's "own words" alleging that his former No Fly List status causes him reputational harm, *Fikre*, 904 F.3d at 1040, but the Court did not hold that plaintiff's allegations of reputational injury would be sufficient to avoid mootness. Nor did the Court cite any precedent that would support the proposition that the lingering secondary reputational effects of an otherwise moot action are sufficient to avoid mootness, or discuss the Court's own precedent in stating that "[t]he Supreme Court has consistently held that reputation is not a sufficient interest to avoid mootness." *Jackson*, 399 F.3d at 1075. Furthermore, this Court suggested that plaintiff could allege ongoing stigma only "[a]bsent an acknowledgment by the government that its investigation revealed Fikre did not belong on the list, and that he will not be returned to the list based on the currently available evidence." *Fikre*, 904 F.3d at 1040. But the government's declaration does just that; it acknowledges that plaintiff "no longer satisfied the criteria for placement

on the No Fly List" and that "[h]e will not be placed on the No Fly List in the future based on the currently available information."  ER-66.

### C.  The District Court Lacks Subject Matter Jurisdiction Over Plaintiff's No Fly List Claims

Even if plaintiff's No Fly List claims are not moot, this Court can affirm the dismissal of those claims on the alternative grounds that the district court lacked subject matter jurisdiction to hear those claims.  Under 49 U.S.C. § 46110(a), "a person disclosing a substantial interest in an order issued by * * * the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator * * * may apply for review of the order by filing a petition for review" in an appropriate court of appeals.  The court of appeals "has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order."  *Id.* § 46110(c).

In *Kashem*, 941 F.3d at 390, this Court noted that "[b]efore the 2015 revisions to the DHS TRIP procedures, [this Court] held that § 46110 does not bar district court review of a No Fly List order," and "[t]wo

44

considerations drove those holdings." "First, it was TSC, not TSA, that made the ultimate decision under the pre-2015 rules," and "[s]econd, any judicial remedy would have required the involvement of both TSA and TSC, given that TSC was the sole entity with both the classified intelligence information Plaintiffs want and the authority to remove them from the List." *Id.* at 390-91. Based on those two considerations, this Court "would have needed jurisdiction over TSC to effect relief, and § 46110 did not grant [the Court] that jurisdiction." *Id.* at 391.

However, "[u]nder the current procedures" as revised in 2015, *see supra* at 7-8, "the TSA Administrator is solely responsible for issuing a final order maintaining a traveler on the No Fly List." *Kashem*, 941 F.3d at 391. "The TSA Administrator * * * has full authority to order the complainant removed from the list" and "[i]t is no longer the case * * * that any remedy must involve TSC." *Id.* It follows, *Kashem* held, that "[49 U.S.C.] § 46110 grants the courts of appeals, rather than the district courts, exclusive

45

jurisdiction over the plaintiffs' substantive due process claims" challenging their status on the No Fly List. *Id.*

*Kashem* is squarely on point. This Court may thus affirm the district court's dismissal of plaintiff's substantive due process challenge to his No Fly List status on that independent ground, even if that claim were not moot. Furthermore, while *Kashem* did not resolve whether a district court retains subject matter jurisdiction over a procedural due process challenge to a plaintiff's No Fly List status, *Kashem* 941 F.3d at 391 n.16, the Court's logic equally applies to such a claim. As *Kashem* noted, this Court's pre-2015 decisions concerning both substantive and procedural due process challenges to No Fly List status turned on the same factors – the identity of the agency making the ultimate decision as to No Fly List status and against whom any remedy must run. The 2015 revisions to the DHS TRIP process make clear that, at the conclusion of the redress process, TSA makes the ultimate decision whether to maintain or remove a U.S. person from the No Fly List. That revision requires a different jurisdictional

outcome not just for substantive due process challenges to the No Fly List,

but for procedural due process claims as well.[5]

## II.  PLAINTIFF CANNOT ESTABLISH A PROTECTED LIBERTY INTEREST FOR HIS PROCEDURAL DUE PROCESS CHALLENGE

To establish a procedural due process claim, a plaintiff must show

that he possesses a constitutionally cognizable liberty or property interest.

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Chappell v. Mandaville*, 706 F.3d

1052, 1062 (9th Cir. 2013).  Plaintiff advances only one purported liberty

interest – that his alleged status on the Terrorist Screening Database

---

[5] Dicta in *Kashem* mistakenly stated that a procedural due process claim "challenge[s] the sufficiency of the revised DHS TRIP procedures administered *by the TSC*."  941 F.3d at 391 n.16 (emphasis added).  Even before 2015, however, this Court recognized that a "procedural challenge" to No Fly List status "requires judicial review of orders issued" at least in part "by TSA," *Latif v Holder*, 686 F.3d 1122, 1128 (9th Cir. 2012).  *Accord Mokdad*, 804 F.3d at 811 ("To the extent that [a plaintiff] challenges the adequacy of the redress process, his claims amount to a challenge to a TSA order."); *see also Matar v. TSA*, 910 F.3d 538, 539, 541 (D.C. Cir. 2018) (where a petitioner challenged the adequacy of TSA's DHS TRIP redress procedures, the court of appeals held that "[i]t is undisputed that § 46110 controls the disposition of this case").  That is because Congress vested TSA alone with authority to establish the DHS TRIP process, 49 U.S.C. §§ 44903(j)(2)(C)(iii)(I), (j)(2)(G)(i), and TSA promulgated regulations carrying out Congress' directive, 49 C.F.R. §§ 1560.201-.207.

(separate and apart from his former No Fly List status) implicates a protected liberty interest in his reputation.

"[P]rocedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of a right or status," in what is known as a "stigma-plus" claim. *Edny v. County of Los Angeles*, 975 F.3d 757, 764 (9th Cir. 2020). The stigma-plus test "can be satisfied in two ways." *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006). "First, the plaintiff must show that the injury to his reputation was inflicted *in connection with* the deprivation of a federally protected right. * * * Second, the plaintiff must show that the injury to reputation *caused* the denial of a federally protected right." *Id.* (emphasis in original).

Plaintiff cannot satisfy the requirements of a stigma-plus claim because he has failed to show that his alleged TSDB status results in either stigma or a qualifying "plus."[6]

---

[6] Plaintiff does not argue that the district court erred in dismissing his *substantive* due process challenge to his alleged TSDB status because

## A. Plaintiff Cannot Establish Public Stigma Element of a Stigma-Plus Claim

To establish the stigma element of a stigma-plus claim, a plaintiff must allege "some public disclosure" of the government's supposedly stigmatizing statement. *Wenger v. Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002). It is undisputed, however, that the government *does not* publicly disclose a person's status on the TSDB, *see supra* at 8-11, and thus it cannot constitute the required "public disclosure" necessary for a stigma-plus claim. For this reason, the Fourth Circuit rejected the argument "that inclusion in the TSDB stigmatizes [plaintiffs] by associating them with terrorism," reasoning that "[t]he government does not publicly disclose TSDB status," and therefore alleged TSDB status cannot constitute "'public

---

plaintiff "alleges no facts that show 'conscience shocking' behavior by Defendants that resulted in the deprivation of a reputational liberty interest." SER-104. Nor does plaintiff advance a procedural due process challenge to his alleged TSDB status predicated on anything other than a stigma-plus theory. Regardless, any asserted liberty interest in travel implicated by TSDB status would fail on the merits for the reasons stated *infra* at 55-60.

disclosure' by the government" as required for a stigma-plus claim. *Elhady*, 993 F.3d at 225.

Plaintiff contends (Br. 32) that TSDB status is publicly disclosed when it is disseminated to federal, state, and local law enforcement agencies or to private entities carrying out various law-enforcement functions. But the Fourth Circuit rejected that argument as well, holding that "the federal government's intragovernmental dissemination of TSDB information to other federal agencies and components, to be used for federal law enforcement purposes, is not 'public disclosure' for purposes of a stigma-plus claim." *Elhady*, 993 F.3d at 225. That holding "comports with common sense; government could not function if every intra- or inter-departmental memo critical of a person created a constitutional claim. The same rationale explains why disclosure to state or tribal law enforcement agencies does not constitute public disclosure." *Id.* at 225-26.

The Fourth Circuit's on-point holding is in accord with the decisions of other courts, including this Circuit, holding that inter-governmental

dissemination does not constitute public disclosure for purposes of a stigma-plus claim. *See Wenger*, 282 F.3d at 1074 n.5 ("no 'public disclosure'" where allegedly defamatory material was disclosed by the National Guard "to other branches of the military, not to the public"); *Edny*, 975 F.3d at 765 (no stigma in part because relevant records were "shared only with other governmental entities responsible for the safety and welfare of children" and were "confidential and generally prohibited from public disclosure absent court order"); *Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991) ("potentially stigmatizing information which * * * has not been disseminated beyond the proper chain of command within the police department has not been made public"); *Asbill v. Housing Authority of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984) ("intra-government dissemination * * * falls short of the Supreme Court's notion of publication"); *Estrella v. Menifee*, 275 F. Supp. 2d 452, 458 (S.D.N.Y. 2003) (rejecting due process challenge where "all of the information will only be sent to state and local law enforcement agencies").

51

The Fourth Circuit further held that the government does not "publicly disseminate[] the plaintiffs' TSDB statuses in a manner sufficient to constitute an injury of constitutional proportion" when it allows access to TSDB status to "a select number of private companies that work closely with issues related to national security, like nuclear power and chemical plants." *Elhady*, 993 F.3d at 226.

Plaintiff argues (Br. 28-31), and the district court agreed (SER-102-103, 106-107), that the government publicly stigmatizes him by repeatedly subjecting him to enhanced security screening at airports. But public airport screening does not constitute government stigmatization. As noted above, *supra* at 4-5, enhanced security screening "is a relatively common experience for frequent airport travelers because the TSA will often randomly select people for this screening," and "most passengers chosen for enhanced screening are not in the TSDB." *Elhady*, 993 F.3d at 215. "Since every air passenger is subject to a search, there is virtually no stigma attached to being subjected to a search at a known, designated airport

52

search point." *United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006)

(Alito, J.); *United States v. Skipwith*, 482 F.2d 1272, 1275 (5th Cir. 1973)

(noting "the almost complete absence of any stigma attached to being

subjected to search at a known, designated airport search point"); *United*

*States v. Edwards*, 498 F.2d 496, 500 (2d Cir. 1974) ("The search of carry-on

baggage, applied to everyone, involves not the slightest stigma * * * .  More

than a million Americans subject themselves to it daily.") (Friendly, J.).

Moreover, because passengers may be subjected to enhanced security

screening for various reasons, including random selection, no stigmatizing

inference or status on the TSDB can or should be drawn from enhanced

screening.  *Scherfen v. DHS*, 2010 WL 456784 at *7 (M.D. Pa. 2010).

The district court recognized that "it might be unremarkable" to be

subject to enhanced security screening because such measures could be

imposed "randomly," but it reasoned that *repeated* enhanced security

screening is stigmatizing because "eyebrows would surely raise if that

same person were repeatedly subjected to intense scrutiny."  SER-102.  But

it is inherent in the nature of random selection that the same person could be randomly selected multiple consecutive times for enhanced security screening, just as a coin may randomly come up heads rather than tails on multiple consecutive flips. In addition, random selection is just one among several reasons why a passenger may be selected for enhanced security for "reasons unrelated to the TSDB." SER-28. Nor is there anything stigmatizing about being searched "at the gate." SER-102. To the contrary, "TSA is also authorized to require additional screening of *all* passengers at the gate." *Elhady*, 993 F.3d at 214. The district court pointed to no basis for determining that screening at the gate was any more stigmatizing than any other airport screening.

Plaintiff contends (Br. 32) that this Court has previously held that he has been stigmatized by his alleged TSDB status. That is incorrect. In the prior appeal this Court merely "note[d]" plaintiff's "own words" alleging a reputational injury, *Fikre*, 904 F.3d at 1040, but the Court did not hold that plaintiff satisfied the requirements for a stigma-plus claim by asserting that

his alleged TSDB status caused him reputational harm. The Court addressed only the question of mootness, not the merits of plaintiff's due process claims, and the only issue in the earlier appeal concerned plaintiff's former No Fly List status, not any alleged status on the TSDB.

**B.** **Plaintiff Cannot Establish the "Plus" Element of a Stigma-Plus Claim**

Plaintiff's stigma-plus claim fails for the independent reason that he has not alleged any qualifying "plus" for such a claim. All of plaintiff's claimed "pluses" are either (1) injuries that are insufficient as a matter of law; (2) harms that plaintiff did not actually experience; and/or (3) lack any connection to plaintiff's alleged reputational injury supposedly inflicted by his TSDB status.

**1.** Plaintiff alleges that the he is subjected to "lengthy and onerous secondary screening at airports because of his TSDB status," ER-32 ¶ 35, and that such enhanced searches "result in [a] change[] in status" that qualifies as a plus for his stigma-plus claim, Pls. Br. 36. Plaintiff likewise contends that he is subjected to "lengthy and onerous secondary inspection

at land borders," Pls. Br. 34; ER-32 ¶ 35, that also constitutes a plus for his stigma-plus claim.

Those arguments have been rejected by every circuit to consider them. In *Beydoun v. Sessions*, 871 F.3d 459 (6th Cir. 2017), the court addressed a due process challenge brought by two U.S. citizens who alleged they were on the Selectee List, *id.* at 462-63. One plaintiff alleged that he had "been delayed or subjected to additional screening [at airports], with delays ranging from ten minutes to one hour in duration," and "had been deterred from flying on one occasion," while the other plaintiff alleged that "he ha[d] missed 'countless flights' after being subjected to lengthy secondary screenings" at airports. *Id.* at 467-68.

The court held that "Plaintiffs did not allege that any protected interest was violated by the[ir] being on the Selectee List," reasoning that "[p]laintiffs may have been inconvenienced by the extra security hurdles they endured" but "these burdens do not amount to a constitutional violation" because "Plaintiffs have not actually been prevented from flying

56

altogether or from traveling by means other than an airplane." *Id*. at 468. The delays and inconveniences experienced by the plaintiffs in that case could "only be described as incidental or negligible and therefore do not implicate the right to travel. * * * When Plaintiffs' only allegations amount to delays that many individuals are likely to experience at the airport, it is hard to conclude that the fundamental right to travel has been implicated." *Id*. Accordingly, the court held that allegations of enhanced security screening at airports did not implicate a protected liberty interest whether considered as an alleged liberty interest in travel, *id*. at 467-68, or as the "plus" in a stigma-plus claim, *id*. at 468-69.

Similarly, in *Abdi v. Wray*, 942 F.3d 1019 (10th Cir. 2019), the court addressed a U.S. citizen's due process challenge to his alleged inclusion on the Selectee List and held that the plaintiff lacked a constitutionally cognizable liberty interest in traveling without being subject to enhanced security screening. The plaintiff alleged "he has been subject to extended security screenings each time he travels by air," including an inability "to

check in for flights online or at the self-service kiosks at the airport,"

"secondary inspections, questioning, and prolonged searches of his person

and luggage," having "TSA agents shut down an entire screening line and

requir[ing him] to proceed through the line by himself," and "at the gate,

[being] publicly searched again by TSA agents before he is allowed to

board his plane." *Id.* at 1023. The plaintiff alleged one delay of "about a

half hour," and another delay of 48 hours. *Id.* at 1023-24, 1026. The court of

appeals rejected the claims because "the burdens and delays alleged by [the

plaintiff] do not substantially interfere with his travel rights." *Id.* at 1030.

The plaintiff's "placement on the Selectee List affects only one mode of

transportation," and in addition, his longest asserted delay was "for just

two days." *Id.* at 1030-31. "Delays of a few hours are not uncommon for

many air travelers and do not amount to a substantial interference with the

rights to travel interstate or internationally." *Id.* The court thus held that

"the government's conduct did not deprive [the plaintiff] of a liberty

interest in travel," and that "the complaint failed to allege facts that demonstrate the second element of the stigma-plus test." *Id.* at 1032.

Finally, in *Elhady v. Kable*, 993 F.3d 208 (4th Cir. 2021), the court considered the due process claims of 23 plaintiffs who alleged they were on the TSDB and claimed that as a result they experienced various delays and burdens of enhanced security screenings at airports and secondary inspection at the border, *id.* at 215-17. The court held that "[t]he experiences alleged by plaintiffs do not rise to the level of constitutional concern. Most plaintiffs complain of minor delays in airports of an hour or less. These burdens are not dissimilar from what many travelers routinely face, whether in standard or enhanced screenings, particularly at busy airports. After all, most travelers who face lengthier enhanced screenings are not in the TSDB but are instead chosen randomly." *Id.* at 221. As for "additional screenings when crossing national borders," the court held that "it is clear that plaintiffs do not possess a protected liberty interest in being free from screening and delays at the border," because "[t]he Supreme

59

Court has made clear that the government has broad power to search and
seize individuals at the border" and "delays are not atypical for travelers,
particularly at busy ports of entry at land borders." *Id.* at 223-24. For the
same reasons, the court held that the delays and burdens of enhanced
security screenings at airports and secondary inspections at border
crossings could not constitute the plus in a stigma-plus claim. *Id.* at 226.[7]

---

[7] Plaintiff argues that because of his alleged TSDB status, the
government denied him the ability to participate in the religious
commandment of *hajj*, and that such an alleged deprivation constitutes the
plus in his stigma-plus claim. Pls. Br. 3, 12, 29, 38. But the only relevant
allegations in his complaint, ER-52-55; SER-72-77, amount to the same
enhanced security screening discussed above, and confirm that plaintiff
*was* able to fly to Mecca for *hajj*.

Plaintiff also asserts that he has established the plus in his stigma-
plus claim because "the Government denied him the right to board an
airplane." Pls. Br. 36; *see id*. at 38, 39, 41. But as the district court correctly
observed, plaintiff's stigma-plus claim relates only to his alleged status on
the TSDB, and his allegations of reputational harm relate only to his two
2016 trips which occurred after he was removed from the No Fly List. SER-
112. It is undisputed that status on the Selectee List results in enhanced
security screening, not the denial of boarding. *See supra* at 3.

**2.**     Plaintiff relies on other harms as the plus in his stigma-plus

claim, such as searches of electronic devices at a border crossing; "handling

codes requiring * * * arrest or other adverse treatment during any

encounter with federal, state, local, or private law enforcement officers";

and loss of access to employment with, or credentials for, federal agencies

and other entities.  Pls. Br. 34, 37.  But plaintiff cannot rely on these asserted

harms, because he does not contend that he personally experienced any of

them.  SER-113 ("With the exception of more significant security screening,

Mr. Fikre has not alleged that he has personally suffered any of these

consequences [listed in paragraph 35 of his complaint], such as the denial

of credentials or employment.").[8]

_____

[8] Plaintiff elsewhere asserts that he personally suffered "travel and law enforcement consequences," Pls. Br. 37, but the cited portions of his complaint do not bolster his argument.  One cited portion discusses the 90 day limit for U.S. passport holders to stay in certain European countries, ER-46-47 ¶ 95, and another discusses alleged stigma and its effect on plaintiff's marriage, ER-49 ¶¶ 101-102, but not any alleged deprivation of a federally protected right.  Other portions of plaintiff's complaint discuss the effects of enhanced security screening at airports and secondary inspections at border crossings, ER-52-59 ¶¶ 114-147, which do not constitute a plus for the reasons discussed *supra* at 55-60.  The complaint

This Court should join the two other circuits that have rejected similar stigma-plus due process challenges where a plaintiff failed to allege that he or she personally experienced the asserted harm. In *Abdi*, the plaintiff alleged that his inclusion on the Selectee List could potentially result in a variety of harms that could (he claimed) result in the plus of a stigma-plus claim – such as prohibiting him from accessing the financial system, opening or maintaining bank accounts, making wire transfers, sponsoring the permanent residency of immediate relatives, entering other nations, purchasing a gun, obtaining a commercial driver's license to transport hazardous materials, obtaining or renewing a hazmat license, working for an airport or airline, or obtaining an FAA license. *Abdi*, 942 F.3d at 1033. The court rejected that argument because the plaintiff "failed

---

notes plaintiff's prior indictment at ER-47 ¶ 98, but that does not constitute a plus for the reasons discussed *infra* at 64-66. Finally, plaintiff argues he was "arrested," Pls. Br. 3, 5, 12, 38, 39, but the only allegations in his complaint concern an FBI interview in 2010 where plaintiff alleges he "felt he could not leave," ER-36; SER-57 ¶ 58, and his allegations concerning an arrest by UAE police in 2011, ER-40-45; SER-59-65. These allegations do not constitute a plus for the reasons discussed *infra* at 64-66 & n.10.

to specifically allege that he has actually been prevented from participating in any of the above activities" and his assertions of potential harms were "entirely speculative." *Id.* Similarly, in *Elhady*, the plaintiffs argued that they had "demonstrated a 'plus' injury because inclusion on the TSDB could affect plaintiffs in traffic stops, field interviews, house visits, municipal permit processes, firearm purchases, certain licensing applications, and other scenarios." *Elhady*, 993 F.3d at 227. But the court rejected that argument, holding that "[t]he plaintiffs have not actually alleged an inability to gain employment, obtain permits or licenses, or acquire firearms." *Id.*[9]

---

[9] In addition, both courts held that purported harms could not qualify as a plus if they were not mandated by the plaintiffs' alleged TSDB status. *See Abdi*, 942 F.3d at 1034 (plaintiffs "failed to allege that * * * the government *mandates* that the private and public entities in receipt of the list refuse to offer service or employment to the listed individuals"); *Elhady*, 993 F.3d at 227-28 ("the record does not allow us to conclude [the asserted harm] was *because* of TSDB status as opposed to other reasons" and asserted harms were "inadequately tethered to TSDB status").

The same conclusion applies here: plaintiff does not allege that his electronic devices were searched at the border; that he was arrested by, or had an adverse encounter with, a law enforcement officer as a result of an alleged "handling code" associated with his purported TSDB status; or that he lost access to any employment or credentials. He cannot rely on harms he never experienced as the plus in his stigma-plus claim.[10]

**3.** Finally, plaintiff contends that other asserted harms qualify as a plus in his stigma-plus claim, such as his alleged torture by UAE police in 2011, *see* Pls. Br. 5, 30, 38-39; ER-40-41; *see also supra* note 8; the government's alleged surveillance of his private communications in 2010,

---

[10] Plaintiff's purported harms fail for the independent reason that they do not allege the alteration or extinguishment of any of plaintiff's federally protected rights. Border searches of electronic devices are permissible under the Fourth Amendment either without any individualized suspicion, or (at most) on a showing of reasonable suspicion, *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (en banc), and plaintiff has alleged no search of his devices at all, let alone a search that would be impermissible under this Court's precedents. Nor did plaintiff allege any arrest or other encounter with law enforcement officers that lacked probable cause or other requisite showing, and hence plaintiff has not alleged any deprivation of a legal right. *Hart*, 450 F.3d at 1070.

*see* Pls. Br. 6, 38; ER-50-51; and his criminal indictment which the government dismissed in 2013, *see* Pls. Br. 6; ER-50; *see also supra* note 8. The district court correctly held that none of these purported harms were inflicted in connection with plaintiff's asserted reputational injury that occurred during two trips in 2016. SER-109 (purported harms "occurred well before the 2016 trips"); SER-113 (plaintiff's "'plus' theories" had "absolutely nothing to do with the events of Mr. Fikre's 2016 reputational injury" and "they involve different actors [and] they occurred years apart"). In addition, the district court held, "the TSDB process creates no scheme – formally or informally – which purposefully subjects a TSDB listee" to these alleged harms, SER-112, and those asserted harms "happened for a host of possible reasons," SER-113.

Furthermore, as the district court noted, plaintiff's alleged harms would fail because plaintiff did not adequately plead that they deprived him of any federally protected right. As for plaintiff's allegations regarding torture by the UAE, the district court previously dismissed those

65

allegations as "too speculative to serve as a basis for standing," and the district court also previously dismissed his unlawful surveillance claim with prejudice because his allegations were vague and conclusory. SER-111 n.11. Plaintiff does not contest the former decision in this appeal, and this Court previously affirmed the latter. *See Fikre v. FBI*, 738 Fed. Appx. 545, 2018 WL 4537720 (9th Cir. 2018) (unpublished). Finally, as the district court noted, SER-113 n.12, plaintiff's previous indictment could not serve as a plus because plaintiff does not allege that the indictment was anything other than duly-issued.

### C.     <u>Plaintiff's Contrary Arguments Are Meritless</u>

Plaintiff's reliance on *Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009), *overruled on other grounds by County of Los Angeles v. Humphries*, 562 U.S. 29 (2010), does not bolster his arguments. Plaintiff argues that under *Humphries*, "[t]he mere consulting of the list in question prior to providing [a] right or status qualifies" as a plus in a stigma-plus claim. Pls. Br. 33. Plaintiff also argues that under *Humphries*, he is not required to show any "causal connection between the stigmatizing injury

66

and the change in right or status." Pls. Br. 39. Both arguments miss the

mark.

In *Humphries*, this Court held that plaintiffs had established the

elements of a "stigma-plus" claim with respect to plaintiffs' listing as

"substantiated" child abusers in California's Child Abuse Central Index

("CACI"). But this Court reached that conclusion not merely because

licensing agencies were "required" (as a statutory or practical matter) to

consult the list that plaintiffs were on, 554 F.3d at 1187-88, but also because

"as a result of being listed" plaintiffs suffered "various statutory

consequences," *id.* at 1185-86, which altered the plaintiffs' legal rights "in

* * * ways that [other state citizens] are not subject to," *id.* at 1188. Those

consequences included, *inter alia*, additional investigations before

"becoming licensed or employed in a position dealing with children,"

which "directly affected" the plaintiffs' "eligibility to work or volunteer at

a local community center" and "ability to renew * * * teaching credentials."

*Id.* at 1188; *see id.* at 1183 (describing evidence of current effects of statutory

listing on plaintiffs).  In addition, the plaintiffs did not "just happen[]" to experience those direct effects; "the burdens on the [plaintiffs'] abilities to obtain various licenses and other legal rights from the state of California *are the result* of state statutes creating the CACI, instructing state officers to put certain information on the CACI, and effectively mandating that various entities consult the CACI."  *Id.* at 1189-90 (emphasis added).

*Humphries* does not assist plaintiff's argument here.  As discussed above (*supra* at 55-60), enhanced security screening at airports or secondary inspection at border crossings involve minimal delays or burdens that are similar to what many travelers routinely to face at an airport or border crossing on a random basis or for other reasons unrelated to any watchlist status, and thus those consequences are unlike the ones in *Humphries* that altered the plaintiffs' legal rights "in * * * ways that [other state citizens] are not subject to."  *Humphries*, 554 F.3d at 1188.  As also discussed above (*supra* at 61-64), plaintiff does not allege that he personally experienced certain of the harms he relies upon, unlike the plaintiffs in *Humphries* who

68

alleged facts establishing that they were "directly affected" by the statutory consequences, *id.* at 1183, 1188.

Nor does *Humphries* support plaintiff's suggestion that the claimed reputational injury does not need to be in connection with the asserted deprivation or alteration of a federally protected right. To begin with, nothing in *Humphries* purported to alter this Circuit's requirement for a stigma-plus claim to show "that the injury to reputation was inflicted *in connection with* the deprivation of a federally protected right" or that "the injury to reputation *caused* the denial of a federally protected right." *Hart*, 450 F.3d at 1070 (emphasis in original). Indeed, *Humphries* held that the plaintiffs in that case "must show that, *as the result of* being listed in the CACI, a right or status previously recognized by state law was distinctly altered or extinguished." 554 F.3d at 1186-87 (emphasis added). Plaintiff argues that there does not need to be a "causal connection" between the plaintiff's reputational injury and the deprivation of a protected right, Pls. Br. 39, but the district court did not hold otherwise. The court

69

acknowledged that plaintiff could show *either* a causal connection *or* that the reputational injury was inflicted "in connection with" the deprivation of a protected right, SER-107-109, but held that plaintiff had failed to establish either.

Plaintiff similarly argues that to establish a stigma-plus claim, "[t]he result of the stigmatization * * * need not satisfy a plus factor." Pls. Br. 40. That is incorrect. *Humphries* held that the plaintiffs "must show that" "as the result of" the stigma "a right or status previously recognized by state law was distinctly altered or extinguished," 554 F.3d at 1186-87, and the alteration or extinguishment of a protected right *is* the plus in a stigma-plus claim, *Edny*, 975 F.3d at 764 ("procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action *plus alteration or extinguishment of a right or status*") (emphasis added). It is not enough, as plaintiff contends, that the stigmatization be stigmatizing, Pls. Br. 40, a view that would entirely remove the plus requirement from a stigma-plus claim.

70

## CONCLUSION

For the reasons stated above, this Court should affirm the district

court's judgment.

Respectfully submitted,

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

SCOTT ERIK ASPHAUG
  *Acting United States Attorney*

SHARON SWINGLE
  (202) 353-2689
JOSHUA WALDMAN
  (202) 514-0236
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

June 2021

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,868 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Palantino Linotype 14-point font, a proportionally spaced typeface.

  /s/ Joshua Waldman
JOSHUA WALDMAN
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2021, I caused the foregoing

Answering Brief for Appellees to be filed with the Court through the

electronic filing system.  Counsel for the appellant is a registered CM/ECF

user and service will be accomplished by the appellate CM/ECF system.


  /s/  Joshua Waldman
JOSHUA WALDMAN
*Counsel for Appellees*

## STATEMENT OF RELATED CASES

Appellees are not aware of any related cases pending in this Court.

 /s/ Joshua Waldman
JOSHUA WALDMAN
*Counsel for Appellees*