**The No. 20-35904**

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

───────────────

YONAS FIKRE,

*Plaintiff-Appellant,*

v.

FEDERAL BUREAU OF INVESTIGATION, ET AL.,

*Defendants-Appellees.*

───────────────

On Appeal from the United States District Court
for the District of Oregon

## REPLY BRIEF OF APPELLANT YONAS FIKRE

August 16, 2021

Brandon Mayfield
Law Office of Brandon Mayfield
14631 SW Millikan Way
Beaverton, OR 97003
Phone: 503.941.5101

Lena F. Masri
Gadeir I. Abbas
Justin Sadowsky
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420

*Counsel for Yonas Fikre*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................... 3

ARGUMENT .......................................................................................... 6

  I.  Fikre's Travel Related Claims are not moot. ................................... 6

    A.  The Government ignores this Court's two-part mootness test in *Fikre*.. ................................................................................................ 6

    B.  Fikre remains stigmatized by No Fly List placement precluding fulfillment of the last step. ................................................................. 7

    C.  The Government has not provided any explanation or abiding change in policy that protects Fikre from further injury precluding fulfillment of the second step. ........................................................ 10

    D.  The Government's continued voluntary cessation during the pendency of this case does not assure Plaintiff  as required under the first step. ....................................................................................... 15

    E.  The Government's caselaw does not change the clear holding of *Fikre*. ................................................................................................ 16

  II.  Fikre alleges a stigma plus claim. ................................................. 18

    A.  Fikre properly alleges dissemination. ....................................... 18

    B.  Fikre properly alleges stigmatization. ........................................ 21

    C.  Fikre properly shows a plus factor. ........................................... 22

    D.  The Government's cases are inapposite ..................................... 23

  III.  This Court has jurisdiction over this appeal. .............................. 25

CONCLUSION .................................................................................... 28

CERTIFICATE OF COMPLIANCE ....................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Abdi v. Wray*, 942 F.3d 1019 (10th Cir. 2019) ........................................ 24

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ....................................... 15

*Am. Cargo Transport., Inc., v. U.S.*, 625 F.3d 1176 (9th Cir. 2010) ....... 17

*Beydoun v. Sessions*, 71 F.3d 459 (6th Cir. 2017) ................................... 24

*Chebli v. Kable*, 21-cv-937 (D.D.C. May 12, 2021) .................................. 12

*El Ali v. Barr*, 473 F. Supp. 3d 479 (D. Md. 2020) .................................. 28

*Elhady v. Kable,* 993 F.3d 208 (4th Cir. 2021) ................................. 18, 24

*Endy v. County of Los Angeles*, 975 F.3d 757 (9th Cir. 2020) ............... 19

*Fikre v. FBI*, 904 F.3d 1033  (9th Cir. 2018) ................................. 6, 10, 11

*Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033 (9th Cir. 2018) ...... 6

*Humphries v. Los Angeles*, 554 F.3d 1170 (9th Cir. 2009) ......... 19, 22, 24

*Jardaneh v. Garland*, 18-cv-2415 (D. Md. Apr. 30, 2021) ...................... 14

*Kashem v. Barr,* 941 F.3d 358 (9th Cir. 2019) .................................. 25, 26

*Kovac v. Wray*, 18-cv-110 (N.D. Tex. Apr. 21, 2021) .............................. 14

*Latif v. Holder*, 969 F. Supp. 2d 1293 (D. Or. 2013) .............................. 23

*Mohamed v. Holder*, 995 F. Supp. 2d 520 (E.D. Va. 2014) ..................... 28

*Mokdad v. Lynch*, 876 F.3d 167 (6th Cir. 2017) ..................................... 17

*Wenger v. Monroe*, 282 F.3d 1068 (9th Cir. 2002) ................................. 19

## **INTRODUCTION**

The Government's response contravenes this Court's clear guidance on nearly identical issues of law on appeal four years ago.

At the heart of this matter then and now, this Court must determine whether an innocent man being placed on the No Fly List with all its harmful consequences amounts to a legal claim against the Government.

Specifically, two claims now remain on appeal: 1) a procedural due process claim-that Plaintiff's baseless placement on No Fly List provides no meaningful opportunity to challenge it, and 2) a reputational (stigma plus) procedural due process claim—That his placement on the TSDB and No Fly List was stigmatizing and also violated and continues to violate several of his rights, including his right to return to the U.S and to travel and practice his religion unburdened.

The District Court's ruling dismissing Plaintiff's remaining claims is in error. The District Court, like the government, ignores this Court's prior ruling finding Fikre's due process claim were not moot.

Yet only two notable things have even happened in the last four years since this Court ruled in FIkre's favor and remanded: Fikre

3

amended his complaint at the behest of the District Court to add additional details, and the Government issued a declaration stating it would not place Fikre on the No-Fly List based on currently available information. Neither of these events obviate a finding of mootness or failure to state claim.

The parties are principally in agreement what remains as the key issues in the present case. That is, whether the declaration provided by the government is sufficient to moot the case and whether Fikre has sufficiently pled facts to support a claim of stigmatization under the Supreme Court's stigma plus doctrine.

As to the mootness issue this Court's previous ruling is clear that the declaration alone does not moot Fikre's claims. Yet the Government would have this Court ignore its prior *Fikre* decision outright. For good reason. If the Government can convince this Court that this is a traditional voluntary cessation case, where the government simply withdraws the challenged the policy, the government wins on the due process claim.

But, as the *Fikre* decision pointed out, this case is very different than a typical voluntary cessation case. Here, the Government has pointedly not withdrawn the challenged policy: A No Fly List that causes far-

reaching harm to the individuals on it despite minimal criteria for place-
ment and no due process for those placed. Instead, the Government has
merely taken Fikre off the No Fly List, while still defending their decision
to place him on the list in the first instance. The Government has also
not provided the Fikre or the Court any explanation of why Fikre was put
on the list or taken off, and thus no ability to judge the likelihood of Fikre
being replaced on the list after litigation ends.

And, on top of that, placement on the list is a Government declara-
tion that one is a terrorist. So Fikre remains stigmatized by the Govern-
ment's unlawful conduct. Yet, rather than apologize for its conduct or ex-
onerating Fikre in any way, the Government doubles down, reasserting
that it was correct to place Fikre on the terrorist watchlist and the No
Fly List in the first place.

The District Court erred because it failed to faithfully follow *Fikre*.
The District Court also erred by dismissing Fikre's stigma-plus claim.
Previous district courts in this Circuit have confirmed that No Fly List
placement causes stigma-plus injury. The Government counters by recit-
ing out-of-circuit cases that do not involve the No Fly List. But those
cases—which are contrary to binding Circuit precedent in any event—do

5

not involve No Fly List placement and can be distinguished based on the effect and mechanics of the No Fly List. No Fly List placement entails the Government informing private airlines that individuals on the list are terrorists and mandating those airlines refuse boarding to those individuals. For this reason alone, it meets the dissemination, stigmatization, and plus requirements of the stigma-plus test.

## ARGUMENT

## I.     Fikre's Travel Related Claims are not moot.

### A.     The Government ignores this Court's two-part mootness test in *Fikre*.

The Government's argument that Fikre's travel-related Due Process claims are moot (on the basis of a single declaration) casts aside the most on point precedent imaginable: this Court's prior decision in this case. *Fikre v. FBI*, 904 F.3d 1033 (9th Cir. 2018). *In Fikre,* this Court held that Fikre's claims would not be moot until two separate standards were met. First, it must be "'absolutely clear' to the court, considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Id.* at 1039 (citations omitted). Second, "interim relief or events" must "have completely and irrevocably

6

eradicated the effects of the alleged violation." *Id.* at 1037 (citation omitted).

The Government does neither of these things. The declaration upon which their mootness argument depends states that (1) Plaintiff was "placed on the No Fly List in accordance with applicable procedures," a statement that publicly stigmatizes Yonas Fikre and makes clear the Government intends to keep doing the same things; (2) Plaintiff "was removed from the No Fly List upon the determination that he no longer satisfied the criteria placement on the No Fly List;" and (3) Plaintiff "will not be placed on the No Fly List in the future based on the currently available information." ER-66 at ¶ 5. The Government argues (at 23) that this declaration creates "an entirely different factual posture than it did in the prior appeal in which this Court held that plaintiff's No Fly List claims were not moot." But neither the Government's declaration nor Plaintiff's removal from the No Fly List establish mootness under the law of this case as determined by this Court in its *Fikre* decision years ago.

## B. **Fikre remains stigmatized by No Fly List placement precluding fulfillment of the last step.**

As to the eradication of effects standard, this Court was unambiguous. Only "an acknowledgment by the government that its investigation

7

revealed Fikre did not belong on the list" would suffice. *Id.* at 1040; *see also* Opening Br. at 24-25. The Government disagrees (at 36-37) that such an acknowledgement is required (at 36-37), but tellingly, it fails to cite or address *Fikre* at all.[1] If the Government disagreed with the initial *Fikre* decision, its obligation was to seek reconsideration or Supreme Court review, rather than just ignore that decision going forward.

The Government tries to argue (at 40-43) that ongoing reputational harm from No Fly List placement cannot prevent mootness. But other than incorrectly asserting that "the Court did not hold" that "reputational injury would be sufficient to avoid mootness," the Government merely complains that this Court got it wrong in *Fikre* and failed to cite sufficient precedent. The Government then (at 43)—finally conceding the *Fikre* holding—tacks to prevarication. It claims that the Declaration was "an acknowledgement by the government that is investigation revealed Fikre did not belong on the list." It is not such an acknowledgement.

---

[1] The District Court found the Government had not met this standard but held the standard only applied to Fikre's stigma-plus claims. ER 4. As Fikre's opening brief explained (at 26-27) the District Court's limitation of Fikre was in error. The Government does not appear to defend this reasoning anywhere in its Opposition.

The Declaration is the opposite: "[Fikre] was placed on the No Fly List in accordance with applicable policies and procedures" and was removed because he "***no longer*** satisfies the criteria for placement." ER 66 (emphasis added).

The Government then suggests (at 39) that "the only allegations of reputational injury in plaintiff's seventh amended complaints concerned two flights plaintiff had taken in 2016," so that there would be no stigmatic effect from placement on the No Fly List. *See also* Gov't Br. at 60 n.7 This argument is also foreclosed by *Fikre*, which held Fikre was in fact stigmatized by placement. 904 F.3d at 1040.

But it is also fundamentally false. Fikre, while on the No Fly List, was interrogated and tortured by the UAE as a result of being labeled a terrorist. ER 44-46. And the stigma from being alleged a terrorist while exiled in Sweden caused personal trauma, including a divorce. ER 49. And then there is the most obvious and fundamental form of stigmatization: Because of No Fly List placement, Fikre was unable to board an airplane. As a result, he was stuck in the UAE and Sweden, unable to return home despite being an American citizen. ER 65-70.

**C.** **The Government has not provided any explanation or abiding change in policy that protects Fikre from further injury precluding fulfillment of the second step.**

As to the voluntary cessation standard, the Court in *Fikre* was equally clear: There must be at minimum an "explanation or change in policy" 904 F.3d at 1039-40; *see also* Opening Br. at 15-24. Here there was neither. The Government pointedly has made no change in policy. And the Government's boilerplate language that Fikre would not be placed again based on "currently available information" does not cut it as an explanation. The Government still "has not assured Fikre that he will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place, nor has it verified the implementation of procedural safeguards conditioning its ability to revise Fikre's status on the receipt of new information." *Fikre*, 904 F.3d at 1040. Indeed, by doubling down and saying that Fikre previously belonged on the No Fly List, the Government is insisting that Fikre may be banned for the precise (secret) "reasons that prompted the government to add him in the first place." *Id.* (also noting "the government has not repudiated the decision to add Fikre to the No Fly List").

The Government argues (at 28 n.2) its nonbinding declaration is enough due to the presumption of good faith. If that were true, then the presumption of good faith would have already been implied from the Government's "mere announcement that Fikre was removed from the list" that Fikre would not be placed back on the list for the same reason. 904 F.3d at 1039. And yet this Court already held such an announcement "falls short of meeting the government's burden." *Id.* The Government further asserts that its declaration "provides the assurance that the government is not 'practically and legally free to return to its own old ways.'" Gov't Br. at 32-33 (quoting *Fikre*, 904 F.3d at 1039). But the Government does not explain what practical or legal barriers exist, and Fikre is not aware of any.

Context and timing only further undermine the Government's argument that its declaration changes anything from when this case was previously before this Court. The Government alleges that Fikre belonged on the list at one point and no longer does, but it has made no showing as to what changed other than the pendency of this lawsuit. And as the Government further appears to recognize (at 31-32 and n.4), removal of individuals from the watchlist in an attempt to moot litigation

11

is a regular practice of the Government. *See also Chebli v. Kable*, 21-cv-937, Dkt. 4 (D.D.C. May 12, 2021) (voluntarily dismissing case after government removed plaintiff from No Fly List ten days after plaintiff filed Complaint). It would seem the circumstance that has changed is most likely one of this litigation.

And so the Government wants it both ways. It claims that individuals are placed on the No Fly List based on objective criteria rather than the Government's whim, but it also argues federal officials can avoid addressing the legality of the no fly list by simply removing individuals from the No Fly List when those individuals file a lawsuit. Yet if the No Fly List criteria is really objective, then unless something has changed other than the pendency of the lawsuit—and the Government provides no evidence to the Court that anything has—the Government would be duty-bound to put the individual back on once the lawsuit was over. Even if it was not duty bound to do so, the Government would still have every ability to replace Fikre and others back on the No Fly List should its prerogatives change, which is common for, among other reasons, any change in administration. No practical or legal barrier exists. *See Fikre*, 904 F.3d at 1039.

For illustration, consider if someone were placed on the No-Fly List for their religious attendance at a mosque, and then the person stopped attending that mosque, and the Government issued a declaration stating it would not place the person on the list based on the available information. Such action does not preclude the theoretical plaintiff from easily being placed back on the list if he resumes attendance. And since the Government has neither articulated the original basis for placing the individual on the list, nor acknowledged that he did not belong on it to begin with, the individual has no idea what to do to avoid being placed on. And if the pendency of a lawsuit is the reason instead, the individual may have no ability to avoid it even if the individual knew.

Moreover, the declaration suffers the same fatal flaw as the Government's initial notice that Fikre was no longer the No Fly List. As this Court previously pointed out, "the FBI's decision to restore Fikre's flying privileges is an individualized determination untethered to any explanation or change in policy, much less an abiding change in policy." See *Fikre* at 1040.

The Government (at 34-35) concedes it has not provided any explanation but claims it would be unfair to ask them to disclose classified

13

information. Again, if the Government disagreed with the *Fikre* decision it should have sought reconsideration or certiorari then, rather than challenge the decision now.

In any event, the Government could have provided the information under seal, or under an attorneys' eyes only designation, as it did with other information in this case. Or, it could have done what it has done in another case as it relates to TSDB information (and suggested it would do in a third), which is to provide that information under seal ex parte.[2] Neither the Government nor the Courts are alien to the handling of classified information and the due process issues they raise. Instead, the Court should treat the Government's failure to provide this information as no different from the Government declining to claim it exists in the first instance.

---

[2] *See Kovac v. Wray*, 18-cv-110, Dkt. 67 (N.D. Tex. Apr. 21, 2021); *Jardaneh v. Garland*, 18-cv-2415, Dkt. 128, at 28-32 (D. Md. Apr. 30, 2021). In both cases, the parties are currently litigating whether that information must be unsealed or disclosed in part or whole to plaintiffs or their attorneys.

**D.** **The Government's continued voluntary cessation during the pendency of this case does not assure Plaintiff as required under the first step.**

The Government separately argues (at 23) that the *Fikre* decision had some sort of expiration date, so the passage of time itself can moot the case. If so, one would think the *Fikre* decision would have mentioned that. In any event, the passage of time while this lawsuit remains pending is irrelevant to the concern that Fikre will be replaced on the No Fly List after the lawsuit ends, which is what "voluntary cessation" doctrine addresses. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Nor is the passage of time relevant at all to the stigmatizing effect of the watchlist and whether the Court may still remedy that effect.

For its argument the Government relies on *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000). There, the plaintiffs sued various HUD officials, after HUD threatened fines over plaintiffs' protected free-speech opposition to a public housing project near their homes. *Id.* In that case this Court held that a claim may be mooted if the Government's *unequivocal* voluntary cessation, *accompanied by a codified procedural change*, endured for long enough to become "entrenched" policy. *See id.*; *id.* at 1243. Here,

unlike in *White*, there is no abiding change in policy, just an easily changeable individualized determination.

Here, the Government ceased (some of) its questioned conduct mid-litigation after being dealt a loss on appeal. It did not make the same gesture pre-litigation. Nor was its cessation accompanied by any codified change in policy or procedure, any press release, or any field handbook, all of which existed in *White* to bolster assurance to the plaintiffs. And most glaringly of all, the Government here has not vindicated Plaintiff in unequivocal terms as in the *White* case (and as required by this Court's *Fikre* decision).

### E.  The Government's caselaw does not change the clear holding of *Fikre.*

Further running away from *Fikre*, the Government relies (at 33) on a series of out of circuit cases for the proposition that a declaration alone, is enough to overcome the voluntary cessation exception to mootness. However, in all but one of them, in addition to a declaration, the government defendant ceased enforcement of the challenged policy or changed the policy itself; should the Government do that here, Fikre agrees this case would be moot. The Government similarly argues (at 28 n.2) that "Plaintiff does not dispute that 'the government's change of policy

presents a special circumstance in the world of mootness,' because 'unlike in the case of a private party, we presume the government is acting in good faith.'" (Quoting *Am. Cargo Transport., Inc., v. U.S.*, 625 F.3d 1176, 1180 (9th Cir. 2010)). But that is just it. There is no change in policy. So there can be no presumption as a result.

The outlier voluntary cessation case the Government provides is the Sixth Circuit's decision in *Mokdad v. Lynch*, 876 F.3d 167 (6th Cir. 2017), a No Fly List (but not watchlist) case. It is distinguishable for two key reasons. First, the Sixth Circuit held the removal failed to meet the "voluntary cessation" exception to mootness because it found the notice of removal was "hardly … voluntary" as it was done in response to a court order. *Id.* at 171. By contrast, here the declaration was not ordered by the court (further reinforcing Plaintiff's claim that the government is again trying to voluntarily moot his claims and escape review of its policies by the voluntary submission of its declaration). Second, in *Mokdad,* the court reasoned that because Mokdad was taken off the No Fly List and sought no other relief, there was no other relief the court could provide. *Compare id.* at 170 *with* SER 87 and § A, above.

17

Thus, none of the cited cases dictate anything different than what *Fikre* requires. But even if the other cases were contrary, the Court would still be bound by *Fikre* as opposed to any out-of-circuit precedent. And because the Government failed to meet the unambiguous criteria in *Fikre* necessary to moot this case, Fikre's movement-related Due Process claims remain a case and controversy.

## II. Fikre alleges a stigma plus claim.

Fikre can establish his stigma-plus claim by alleging dissemination, stigma, and plus. Fikre shows all three. *See generally* Opening Br. at 27-41.

### A. <u>Fikre properly alleges dissemination.</u>

The Government has "disseminated Plaintiff's status in the TSDB and his No Fly List annotation to federal agencies, state agencies, foreign governments, and private entities including airlines." ER 82.

Despite this, and relying primarily on *Elhady v. Kable,* 993 F.3d 208 (4th Cir. 2021), the Government claims (at 49) Fikre cannot show dissemination. But the Government cannot escape two fatal flaws with this argument. First, *Elhady* is contrary to Ninth Circuit precedent.

Second, the No Fly List operates differently than the broader terrorism watchlist at issue in *Elhady*.

This Circuit holds that a stigma-plus plaintiff need not show dissemination. Instead, "[a] tangible burden exists in this context where a law effectively requires agencies to check a stigmatizing list and investigate any adverse information prior to conferring a legal right or benefit." *Humphries v. Los Angeles*, 554 F.3d 1170, 1188 (9th Cir. 2009), *as amended* (Jan. 30, 2009)*, rev'd on other grounds*, 562 U.S. 29 (2010). This Circuit also holds that intragovernmental dissemination is still dissemination: "CANRA explicitly provides that a variety of agencies will have access to the CACI, and we cannot turn a blind eye to the actions of these other agencies merely because they are not explicitly required by statute to receive CACI information." *Id.* at 1188-89.

The Government declines to meaningfully grapple with this holding in *Humphries*, instead asking the Court (at 51) to apply as holding stray language from an unreasoned footnote in *Wenger v. Monroe*, 282 F.3d 1068, 1074 n.5 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 2002), and dicta in *Endy v. County of Los Angeles*, 975 F.3d 757, 765 (9th Cir. 2020). But the clear point of *Wenger* was merely

19

that dissemination had to be connected in some way to the stigmatizing effect. 282 F.3d at 1074 n.5; *see also* Opening Br. at 39-41 (any connection requirement met in this case). And the Court in *Endy* was simply explaining that the information alleged to be stigmatizing would not be when shared only internally as "the entities who are able to view Endy's listing … are those who should be familiar" with the clarifying and accurate annotation that was challenged by Endy as misleading. 975 F.3d at 765.

In any event, Fikre can show dissemination to a private third party, connected to Fikre's stigmatization. No Fly List information is as a matter of course disseminated to airlines in order to prohibit flying. ER 45, 55, 61; Opening Br. at 40-41. Because none of the appellees in *Elhady* were on the No Fly List, in *Elhady*, the Court found there was no mandatory third-party dissemination. 993 F.3d at 216 & 220. The Government's only response to this is a mistaken assertion (at 60 n.7) that "plaintiff's stigma-plus claim relates only to his alleged status on the TSDB, and his allegations of reputational harm relate only to his two 2016 trips which occurred after he was removed from the No Fly List." Respectfully, the operative Complaint shows this is wrong. *See, e.g.*, SER

69 (describing effects of "the stigma Plaintiff's No Fly List placement imposed") SER 81 (removal "does not provide the necessary vindication to eliminate the stigmatizing effects of No Fly List and watchlist placement"); SER 82 ("Defendants have disseminated Plaintiff's status in the TSDB and his No Fly List annotation").

## B.   **Fikre properly alleges stigmatization.**

Fikre properly alleges being stigmatized by his No Fly List placement as well as his TSDB (watchlist) placement, *see* Opening Br. at 28-31 *see also* § I(A), above. The Government—mistakenly cleaving the No Fly List from the broader watchlist the No Fly List is a subset of, *see* Gov't Br. at 60 n.7—does not appear to challenge Fikre meeting this part of the stigma-plus test. To the extent it does, Fikre has shown stigmatization for the reasons explained in Section I(A), above.

The Government adopts the district court's mistaken reading of Plaintiff's allegations (that any burden on a right before 2016 is irrelevant because the 2016 trip events are the only Stigmatizing events). *See* Gov't Br. at 60 n.7. To the extent the Government is denying any stigma from the initial TSDB and No Fly List placement, Fikre has shown stigmatization for the reasons explained in Section I(A), above.

21

## C.    **Fikre properly shows a plus factor.**

As Fikre explained in his opening brief (at 32-33), all Fikre must show to establish a plus factor is a "tangible burden" on the "ability to obtain a right or status" or that a right or status was "altered or extinguished." *Humphries*, 554 F.3d at 1188; *see also* Opening Br. at 34-38 (showing plus factor met). The Government disagrees, arguing (at 67-68) that Fikre must show that he actually suffered a plus injury, and that the plus injury was caused by the disclosure of stigmatizing information by the Government.

This is contrary to the facts of *Humphries* itself. In *Humphries*, the Government's placement of plaintiffs on a list did not eliminate Wendy Humphries' ability to teach, but instead "might have an impact on her ability to obtain educational credentials." *Id.* at 1183. Likewise, the Humphries had not been denied the ability to work or volunteer at a community center, but merely that they were "hesitant to seek these opportunities" for fear of rejection. And yet the Court found these forward-looking, speculative injuries were enough. Under the Government's interpretation of *Humphries*, the Humphries would have had no standing, either. So the injuries from TSDB placement that Fikre might bear in the future,

22

which make him hesitant to seek Government licenses or clearances, or go on hajj, *see* ER 55-56, are sufficient.[3]

In any event, Fikre meets the Government's misguided interpretation of *Humphries*. Placement on the No Fly List transmitted to airlines, who are mandated under the law not to allow the individual to fly, which under *Latif* is a protected right. ER 45, 55, 61; *Latif v. Holder*, 969 F. Supp. 2d 1293, 1302-05 (D. Or. 2013). Fikre was indeed refused boarding as a result. This is enough to show that Fikre suffered a stigma-plus injury because of his No Fly List placement. *Latif*, *id.* at 1304-05.

## D.   <u>The Government's cases are inapposite</u>

The Government relies (at 56-60) chiefly on three out-of-circuit cases, none involving individuals on the No Fly List, to show that Fikre suffered no cognizable plus injury under the stigma-plus test.

---

[3] The Government's argument is similar to the error made by the District Court below. The District Court below found no plus factor because Fikre could not show that he had personally suffered any of the potential consequences in *Humphries*, such as denial of credentials or employment, he could not show a plus factor (citing to *Humphries* 554 F. 3d at 1186 as support).  *See* ER 9. But *Humphries* neither limited a plus factor to those consequences nor required any such consequences to actually result. Instead, *Humphries* merely required listing to have a potential "impact" on a plus consequence. *Id.* at 1183.

In *Beydoun v. Sessions*, the "plus" plaintiffs proposed was solely the right to travel. 71 F.3d 459, 469 (6th Cir. 2017). But because the Plaintiffs only alleged "relatively minor additional screening," Plaintiffs were unable to show their right to travel was infringed. *Id.* Here, in contrast, Fikre was completely excluded from travel.

In *Abdi v. Wray*, the plaintiff's stigma-plus claim failed because Abdi failed to allege "he has actually been prevented from" any of the plus factors and because the government did not "mandate" that "private and public entities in receipt of the list" to commit any of the alleged plus harms. 942 F.3d 1019, 1034 (10th Cir. 2019). As noted above, this is contrary to *Humphries*, which controls. And, in any event, the No Fly List mandates that airlines refuse to allow Fikre to board, so Fikre would state a claim here even were *Abdi* to control.

*Elhady,* 993 F.3d at 227, simply and expressly follows *Abdi*. *Elhady* required mandatory plus consequences as a disclose to private entities. *Id*. Like *Abdi*, is contrary to *Humphries*. And even if it were not, the No Fly List imposed mandatory consequences on Fikre (refusal to board) as a result of a disclose to a private entity (an airline). So, like *Abdi*, *Elhady* is inapposite in any event. *See also* § A, above.

## III. This Court has jurisdiction over this appeal.

The Government argues (at 44-47) the District Court was divested of jurisdiction to hear this case by this Court's decision in *Kashem v. Barr,* 941 F.3d 358 (9th Cir. 2019). *Kashem* found that 49 U.S.C. § 46110, which provides original jurisdiction to challenges to decisions of the TSA Administrator, meant that the district court lacked jurisdiction over the No Fly List *Kashem* plaintiffs' substantive due process claims. *Id.* at 390-91. But those substantive due process claims were very different from the due process claims in this case. In *Kashem*, the substantive due process claims—which were very different from the substantive due process claims here, SER 84-86—merely challenged "the substantive decision in the final TSA order" to maintain the plaintiffs on the No Fly List." *Id.* at 391 n.16. The Complaint in *Kashem*, Dkt. 83 at ¶ 145, 10-cv-750 (D. Or. Jan. 11, 2013)[4] confirms. So there, "plaintiffs [were] free to assert their

---

[4] "Because Plaintiffs do not present a security threat to commercial aviation, Defendants' actions as described above in including Plaintiffs on a watch list that prevents them from boarding commercial flights to and from the United States, and over U.S. airspace, are arbitrary, lack even a rational relationship to any legitimate government interest, and have unreasonably deprived Plaintiffs of constitutionally protected rights, including their liberty interests in travel, freedom from false stigmatization, and nonattainder."

substantive challenges to their inclusion on the No Fly List by filing a petition for review in an appropriate court of appeals under § 46110." *Kashem,* 941 F.3d at 391.

This appeal does not concern Fikre's substantive due process claims, which the District Court dismissed. SER 102. As relevant to this appeal, Fikre challenges the No Fly List (and the broader TSDB) on procedural due process grounds. The *Kashem* No Fly List plaintiffs also brought a procedural due process claim (similar to the one Fikre brings), and the Court did not find Section 46110 precluded jurisdiction. 941 F.3d at 364. Instead, the *Kashem* court ruled against the Kashem plaintiffs on the merits on their "as applied" challenge and declined to address a facial challenge. *Id.* So, holding that Fikre's procedural due process challenge to the No Fly List is preempted by Section 46110 would be contrary to *Kashem*.

And the reason why Fikre's due process challenge is not preempted by Section 46110 is simple. Section 46110 could only apply to challenge the decision of the TSA Administrator not to remove Fikre from the No Fly List itself. But Fikre challenges on procedural due process grounds the entire watchlisting system that led to his listing, including both the

initial decision and process used to place him on the No Fly List and TSDB, as well as their effects. SER 81-84. *See e.g.*, SER 84 ("Defendants' actions in placing and keeping Plaintiff on the FBI maintained, secret No Fly List without informing him of such placement, of the basis for his inclusion on the No Fly List, of the means of removing his name from the No Fly List, and without providing an independent forum in which Plaintiff might secure the removal of his name from the No Fly List, all violated and are continuing to violate Plaintiff's right to procedural due process under the Fifth Amendment."). It also challenges the process leading up to the decision of the TSA Administrator. *Id.* Unlike the *Kashem* plaintiffs' Substantive Due Process challenge, it is not a challenge directed at the TSA Administrator's final decision itself.

Indeed, the only decision that Fikre possibly could challenge under Section 46110 is the TSA Administrator' final decision under the 2015 DHS TRIP denial. SER 3-5. That is the only order in this case of the TSA Administrator. The Terrorist Screening Center placed Fikre on the No Fly List. And any earlier actions by the government to add him to the No Fly List or decline to remove him were before the TSA Administrator made any final decision. Yet nothing required Fikre to file a DHS TRIP

petition in the first place in order to challenge his watchlist placement. *See Mohamed v. Holder*, 995 F. Supp. 2d 520, 534-35 (E.D. Va. 2014); *El Ali v. Barr*, 473 F. Supp. 3d 479, 506 (D. Md. 2020).

Meanwhile, Fikre's due process claims challenging the watchlisting enterprise further includes his challenge to being placed on the Terrorism Screening Database regardless of No Fly List status. *See* ER 84-86.[5] The TSA Administrator has no authority to remove an individual from that broader list. So Section 46110 could not impact Fikre's substantive due process challenge to the TSDB.

## CONCLUSION

Fikre has sufficiently pled facts to support his due process claim, as well as his stigma-plus claim, and this Court must accept all plausible facts as pled true. The Government's argument to the contrary misapplies the *Fikre* and *Humphries* opinions and mischaracterizes Fikre's allegations that provide the bases for those claims.

---

[5] While the challenge to the TSDB, among other reasons, makes Plaintiffs' claims broader then the claims in *Kashem*, it does not change the fact that as a result of No Fly List placement in particular, Plaintiffs were harmed by their watchlist placement. *See, e.g.,* § II(D), above. After all, the No Fly List is simply a subset of the broader TSDB in the first instance. *See* ER 32; SER 50-52.

The fact remains that an innocent man was accused of being a terrorist without any chance to defend himself. His reputation was ruined, his travel was blocked, his body was tortured, his name was tarnished, his wife left, his baby was harassed, and his private communications surveilled. This stated and continues to state a claim.

The judgment of the District Court should be reversed with instructions to proceed to discovery on Fikre's due process claims. Respectfully submitted,

August 16, 2021

*/s/ Brandon Mayfied*
Brandon Mayfield
Law Office of Brandon Mayfield
14631 SW Millikan Way
Beaverton, OR 97003
Phone: 503.941.5101

*/s/ Lena F. Masri*
Lena F. Masri
Gadeir I. Abbas
Justin Sadowsky
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420
*Counsel for Yonas Fikre*

## CERTIFICATE OF COMPLIANCE

This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), this brief or other document contains 5,563 words.

This complies with the typeface and type style requirements because this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Lena Masri
Lena F. Masri


*Counsel for Yonas Fikre*