No. 20-35904

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

YONAS FIKRE

Plaintiff-Appellant,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

Defendants-Appellees.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

————————————

**APPELLEES' PETITION FOR REHEARING EN BANC**

————————————

BRIAN M. BOYNTON
   *Principal Deputy Assistant*
   *Attorney General*

SCOTT ERIK ASPHAUG
   *Acting United States Attorney*

SHARON SWINGLE
  (202) 353-2689
JOSHUA WALDMAN
  (202) 514-0236
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7232*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., NW*
   *Washington, DC  20530*

# INTRODUCTION

Plaintiff alleged that the government violated his substantive and procedural due process rights by putting him on the No Fly List sometime prior to April 2010. More than six years ago, however, the government removed plaintiff from the No Fly List. The government also filed a declaration from the Terrorist Screening Center's Acting Deputy Director for Operations stating that plaintiff "will not be placed on the No Fly List in the future based on the currently available information."

Yet the panel erroneously held that plaintiff's No Fly List claims remain live. That decision squarely conflicts with two other circuits' holdings that a plaintiff's No Fly List claims are moot when he is removed from that List and provided with a materially identical declaration. *Long v. Pekoske*, 38 F.4th 417 (4th Cir. 2022); *Mokdad v. Sessions*, 876 F.3d 167 (6th Cir. 2017).

The panel reached its erroneous result by imposing on the government an unprecedented and nearly impossible burden under the voluntary cessation doctrine, under which plaintiff's claims remain live

unless the government undertakes every imaginable way of demonstrating that the challenged conduct would not be likely to recur —*i.e.,* in addition to removing plaintiff from the List and providing the assurances in its declaration, the government must also explain why it removed plaintiff, repudiate its prior decision to put him on the No Fly List, institute procedural safeguards to ensure he will not be returned to the List, and adopt changes to No Fly List policies and procedures. The Fourth Circuit has expressly rejected the panel's "strict application of [the voluntary cessation] standard," because it "demands too much of the government," and "goes too far." *Long*, 38 F.4th at 424-25. The panel's decision likewise conflicts with the Fifth Circuit's holding that the voluntary cessation doctrine does "not require some physical or logical impossibility" that the challenged conduct will recur, *Sossamon v. Texas*, 560 F.3d 316, 325 (2009), and this Court's own en banc holdings that this Court "treat[s] the voluntary cessation of challenged conduct by government officials with more solicitude than similar action by private parties." *Board of Trustees v.*

2

*Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019); *see Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022).

And the conflict is deeper still. The panel suggested that plaintiff's claims challenging the government's *initial* No Fly List decision state a redressable Article III injury, either because plaintiff suffers ongoing reputational harm from that long-ago decision or because a court could award plaintiff meaningful relief by declaring that the government's prior determination was unlawful. Either conclusion only deepens the split with the Fourth Circuit, which held that a plaintiff's "standalone stigmatic harm isn't legally cognizable," and "[a] declaratory judgment on [a plaintiff's] *past* status would * * * have no practical [legal] effect." *Long*, 38 F.4th at 423, 427 n.5.

The panel's errors precipitated a national disuniformity with respect to an important counter-terrorism program, and that alone warrants en banc review. The decision also forces district courts to unnecessarily weigh in on executive branch national-security assessments — where judicial

3

competence is at its nadir — to judge the sufficiency of intelligence analysis and a threat assessment made years ago, and with respect to a watchlisting decision that is no longer in effect. By holding that a plaintiff has a viable standalone challenge to an *initial* No Fly List decision (or, perhaps, to challenge *any* initial watchlisting decision), regardless of the plaintiff's current status or how long ago or temporary that initial decision may have been, the panel's decision potentially opens the door to a vast new category of litigation. And before district courts adjudicate those claims, they must first resolve contentious and complex questions concerning an administrative record that will almost invariably involve material that is classified, law-enforcement privileged, and/or protected Sensitive Security Information. En banc review is warranted to stop the morass of unnecessary litigation that will ensue if the panel's erroneous mootness holding is not reversed.

## STATEMENT

### I.    BACKGROUND

#### A.    The No Fly List

The Transportation Security Administration (TSA) ensures aircraft security, including by implementing the No Fly List of individuals who may pose a threat and are not permitted to board a commercial airline flying within or over the United States.  49 U.S.C. §§ 114(h)(3), 44903(j)(2)(C)(ii).  TSA administers a redress program through which individuals who experience travel difficulties may request that TSA correct any erroneous information, including status on the No Fly List.  *Id.* § 44903(j)(2)(C)(iii)(I), (j)(2)(G)(i); *see id.* § 44926(a), (b)(1); 49 C.F.R. § 1560.201 - .207.  Prior to 2015, the redress program did not disclose a person's status on the No Fly List.  In 2015, the government adopted new redress procedures under which a U.S. citizen or lawful permanent resident may be informed of his or her status on the No Fly List and receive an unclassified summary of reasons.  This Court affirmed the

5

constitutionality of those procedures in *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019).

B.   Factual Background

Plaintiff is a U.S. citizen who alleged that the government put him on the No Fly List sometime prior to April 2010.  ER-27-28.  He sought redress, but pursuant to then-applicable procedures he was not informed of his status on the No Fly List.  Plaintiff brought this action in 2013, contending that his alleged No Fly List status violated due process and seeking declaratory and injunctive relief.

In 2015, the government reassessed plaintiff's redress request under its new procedures, notified plaintiff that he was on the No Fly List because he may be a threat to civil aviation or national security, and made a final determination that plaintiff would remain on that List.  ER-49-50; SER-3-4. In 2016, however, the government notified plaintiff that he had been removed from the No Fly List; plaintiff then successfully boarded a flight. SER-6-7, 11.

C.    Proceedings in *Fikre I*

The district court dismissed plaintiff's claims challenging his No Fly

List status as moot, but this Court reversed and remanded.  This Court

observed that under the voluntary cessation doctrine, a claim is not moot

unless "there is no reasonable expectation * * * that the alleged violation

will recur," and the court asks "whether the government's new position

could be easily abandoned or altered in the future."  *Fikre v. FBI (Fikre I)*,

904 F.3d 1033, 1037-38 (9th Cir. 2018) (alteration in original).  This Court

reasoned that "the government has not assured Fikre that he will not be

banned from flying for the same reasons that prompted the government to

add him to the list in the first place, nor has it verified the implementation

of procedural safeguards conditioning its ability to revise Fikre's status on

the receipt of new information."  *Id*.  at 1040.  In addition, because there

was "no explanation of the reasons for dropping Fikre from the No Fly

List," the court "may not infer the government's acquiescence to the

righteousness of Fikre's contentions."  *Id*.  Nor had the government

"repudiated the decision to add Fikre to the No Fly List and maintain him

7

there for approximately five years." *Id*. Finally, "[a]bsent an acknowledgment by the government that its investigation revealed Fikre did not belong on the list, and that he will not be returned to the list based on the currently available evidence," the plaintiff "remains * * * stigmatized" by his former No Fly List status. *Id*. Because "the government has not executed a declaration to th[e] effect" that plaintiff will not be placed back on the No Fly List based on the currently available information, there are no "procedural hurdles to reinstating Fikre * * * based solely on facts already known," and thus plaintiff's No Fly List challenges were not moot. *Id*. at 1040-41.

C.   Proceedings in *Fikre II*

On remand, the government filed the declaration this Court noted was lacking in the prior appeal. The declaration stated that "Plaintiff was removed from the No Fly List upon the determination that he no longer satisfied the criteria for placement on the No Fly List" and "[h]e will not be placed on the No Fly List in the future based on the currently available information." ER-66.

8

The district court again dismissed plaintiff's No Fly List claims as moot to the extent he alleged travel-related harms, and held that plaintiff failed to allege sufficient facts to state a claim for reputational harm. SER-96 & n.6; SER-102. But a panel of this Court again reversed and remanded. *Fikre v. FBI* (*Fikre II*), 35 F.4th 762 (9th Cir. 2022).

The panel held that plaintiff's No Fly List claims were not moot, reasoning that *Fikre I* "specified * * * what the government was required to do" to satisfy its burden under the voluntary cessation doctrine, and the government's declaration on remand "does not provide the assurances specified * * * as adequate" "to show that it is absolutely clear the allegedly wrongful behavior — Fikre's inclusion on the No Fly List — could not reasonably be expected to recur." Op. 16-17.

According to the panel, the government's declaration "provides no explanation for Fikre's inclusion on or removal from the No Fly List and, far from announcing a change in policy regarding inclusion on the No Fly List, indicates that there has been none." Op. 18; *see id.* (declaration did not

9

"identif[y] any change to the [No Fly List] policies, procedures, and criteria under which Fikre was placed on the No Fly List"). In addition, the declaration did not "repudiate[] the decision to add Fikre to the No Fly List" and "provides no sign that any * * * procedural safeguards have been implemented" that would "condition[ the government's] ability to revise Fikre's status on the receipt of new information." Op. 19-20.

The panel also held that the declaration did not "assure[] Fikre that he will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place." Op. 19. The panel acknowledged that the declaration stated that plaintiff "will not be placed on the No Fly List in the future based on the currently available information," but held that this statement "connote[s] only that Fikre will not be placed on the No Fly List now based on what he did in the past, not that he would not be placed on the List if a new factual record showed that he was engaging in the same or similar conduct once again." Op. 20-21.

10

## REASONS FOR GRANTING THE PETITION

1.  The panel's decision is erroneous and squarely conflicts with the decisions of two sister circuits.

In *Long v. Pekoske*, 38 F.4th 417 (4th Cir. 2022), the plaintiff challenged his status on the No Fly List. *Id.* at 421. While the litigation was pending, the plaintiff was removed from the No Fly List and the government filed a declaration that he would "not be placed back on the No Fly List based on the currently available information." *Id.* at 422. The Fourth Circuit held that the plaintiff's claims were moot because he was "no longer on the list" and does not "retain a 'legally cognizable interest' in his request that [the court] declare his placement on the No Fly List unlawful." *Id.* at 423. And because the government "has assured [the court] that [plaintiff's status] won't change based on the information it has now * * * any future controversy over Long's No-Fly status is not only distant and hypothetical but would also depend on a new set of facts. A declaratory judgment on his *past* status would therefore have no practical effect." *Id.*

11

*Long* also held that the government satisfied its burden under the voluntary cessation doctrine because "the government has promised not to put Long back on the No Fly List without new information that justifies doing so." 38 F.4th at 423. The Fourth Circuit expressly disagreed with *Fikre II*, holding that its "strict application of [the voluntary cessation] standard under these circumstances demands too much of the government." *Id*. at 424. While the *Fikre II* panel held that the government's declaration did not assure the plaintiff that "any decision to add him to the List again 'would necessarily be based on a new factual record,'" Op. 20, the Fourth Circuit held, "unlike the Ninth Circuit," that a "nearly identical" declaration "prove[s] the government will only return Long to the No Fly List on a new factual record." *Long*, 38 F.4th at 425. The Fourth Circuit also rejected the panel's assertion that the plaintiff's claims were not moot absent an explanation of why the government removed the plaintiff from the No Fly List or an announced change in policy, finding "this omission" not "dispositive." *Id.*

12

Finally, *Long* agreed that the government's actions had "completely and irrevocably eradicated the effects of the alleged constitutional violations." 38 F.4th at 426. It rejected the plaintiff's argument that he has a live claim because he remains stigmatized absent an acknowledgement by the government that he never belonged on the List. "Even if that's true," the court concluded, "it's not enough to spare his claims from mootness" because the plaintiff "hasn't alleged facts sufficient to show" that his reputation was damaged by his former No Fly List status. *Id*. The government did not "publicly disclose[] his No-Fly status." *Id*. Absent publication, the plaintiff's "standalone stigmatic harm" injury "isn't legally cognizable." *Id*. at 427 n.5. The court further noted that its conclusion is a "logical byproduct" of the rule that "when injury to reputation is alleged as a secondary effect of an otherwise moot action, some tangible, concrete effect must remain, susceptible to judicial correction." *Id*.

The panel's decision in this case also conflicts with the Sixth Circuit's decision in *Mokdad v. Sessions*, 876 F.3d 167 (2017). There, plaintiff was

13

notified "that he was not on the No Fly List" and provided a "declaration that [he] will not be placed on that list based on currently available information." *Id*. at 168-69. The Sixth Circuit held that the government's "declaration had resolved the only claim before the court," and because "there was no live case or controversy," the No Fly List claims were "properly dismissed" as moot. *Id*. at 170. While *Fikre I* distinguished *Mokdad* because the government had not yet "executed a declaration to that effect," 904 F.3d at 1040, the *Fikre II* panel did not distinguish or even acknowledge *Mokdad*.[1]

---

[1] *Mokdad* held that the government's filing of its declaration in that case was "not voluntary" in the sense that the district court had made it clear that absent such a declaration, it would not dismiss the plaintiff's claims as moot. 876 F.3d at 171. While the district court's request was "not mandatory (unlike a court order), it does suggest that [the government] did not agree to issue the formal declaration entirely of its own free will" and "[b]ecause [the government] did not issue the declaration of its own volition, its actions do not fall under the voluntary cessation doctrine." *Id.* But those circumstances are not substantially different from this case: the government only filed the declaration because, in *Fikre I*, the court made it clear that the case would not be moot in the absence of such a declaration. Under the Sixth Circuit's reasoning, that court would have reached the opposite result from the panel here.

14

In addition to conflicting with two other circuits, the panel's ruling is erroneous. The Supreme Court has observed that claims remain live where the government has not "suggest[ed] that if this litigation is resolved in its favor it will not resume" the challenged conduct. *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007). The government has done more than "suggest" that plaintiff's No Fly List status will not recur based on the currently available information; it has filed a declaration from a high-level government official affirming as much, which should have sufficed, consistent with cases holding that declarations and affidavits may satisfy the government's burden under the voluntary cessation standard. *Thomas v. City of Memphis*, 996 F.3d 318, 326 (6th Cir. 2021); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 646 (7th Cir. 2020); *Brown v. Buhman*, 822 F.3d 1151, 1170 (10th Cir. 2016); *Sossamon*, 560 F.3d at 324-25.

The conflict created by the panel's decision is more than just a disagreement about how identical facts should be assessed under a settled legal standard. Rather, the panel's error ultimately turns on the nearly

15

impossible voluntary-cessation burden it imposed on the government to take every imaginable step to show that challenged conduct will not recur. The correct standard only requires that the challenged behavior "could not *reasonably be expected* to recur," *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 190 (2000) (emphasis added), and not that the government show "some physical or logical impossibility" of recurrence, *Sossamon*, 560 F.3d at 325. *Long* rejected not just *Fikre II*'s conclusion, but its "strict application of [the voluntary cessation] standard," which "demands too much of the government," and "goes too far." 38 F.4th at 424-25. *Long* likewise rejected the panel's insistence that the government must "expl[ain] * * * why it removed [the plaintiff] from the No Fly List" and "announce[ a] change in [the No Fly List] policy," holding that it did not "find [these] omission[s] dispositive," because it was "appropriate — in this unique national-security context where the relevant decision-making is highly sensitive and confidential — to allow the government more leeway on its evidentiary burden than we otherwise

16

might." *Id.* at 425-26. Indeed, *Fikre II*'s overly onerous burden not only

conflicts with *Long*, but is incompatible with this Court's own en banc

decisions affording "more solicitude" to the government in voluntary

cessation cases. *Board of Trustees*, 941 F.3d at 1198; *Brach*, 38 F.4th at 12.

The panel erred further in explaining the No Fly List claim that, in its

view, remains live on remand. The panel made it clear that plaintiff "is not

challenging the TSA Administrator's decision refusing to remove him from

the No Fly List under the [redress] process." Op. 25-26 (emphasis omitted).

Rather, plaintiff is challenging the government's "*initial decision*" "to place

him on the No Fly List." Op. 25. But the panel never clarified exactly how

such a challenge could state a redressable Article III injury, and any

explanation would only exacerbate the panel's split with the Fourth Circuit

as well as Supreme Court precedent.

The panel suggested that plaintiff suffers an Article III injury to his

reputation by virtue of the government's initial placement decision. *See*,

*e.g.*, Op. 19 ("Fikre remained stigmatized"); Op. 25 ("reputational" harms).

17

But the government's *initial* No Fly List decision, by itself, could not give rise to an Article III reputational injury.  It is undisputed that when the government made its initial decision — which plaintiff alleged occurred in 2010 or before — the government did not publicly disclose a person's No Fly List status.  *Kashem*, 941 F.3d at 366; *Fikre I*, 904 F.3d at 1036.  "[W]ithout further disclosure * * * the mere existence of inaccurate information in a database is insufficient to confer Article III standing," at least where the claimed injury is "reputational harm."  *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208-10 (2021).  For that reason, the Fourth Circuit in *Long* — after noting that the government did not "publicly disclose[] No-Fly status" — held that plaintiff's "standalone stigmatic harm" injury "isn't legally cognizable."  38 F.4th at 426, 427 n.5.

In addition, plaintiff cannot avoid mootness by alleging ongoing reputational harm caused by an otherwise moot government action.  *See Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998) ("the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy

18

for appellate review"); *id.* at 16 n.8 (rejecting claim that mootness is
avoided through an "interest in vindicating * * * reputation").  As several
circuits have held, "where reputational injury is the lingering effect of an
otherwise moot aspect of a lawsuit, no meaningful relief is possible and the
injury cannot satisfy the requirements of Article III."  *Anderson v. Carter*,
802 F.3d 4, 11 (D.C. Cir. 2015); *see Aslin v. Financial Indus. Regulatory Auth.,
Inc.*, 704 F.3d 475, 477-79 (7th Cir. 2013); *R.M. Investment Co. v. U.S. Forest
Serv.*, 511 F.3d 1103, 1108 (10th Cir. 2007).  *Long* recognized its conclusion
that standalone stigmatic harm is not cognizable is "a logical byproduct" of
this line of cases.  38 F.4th at 427 n.5.

The panel may have believed that plaintiff's challenge to the
government's initial No Fly List decision stated a redressable Article III
injury because any declaration that the initial No Fly List decision was
unlawful would be binding on any future No Fly List determination and
therefore preclude the government from putting plaintiff back on the No
Fly List in the future based on new facts.  But that would also conflict with

*Long*, which held "any future controversy over [the plaintiff's] No-Fly status is not only distant and hypothetical but would also depend on a new set of facts" and "[a] declaratory judgment on his *past* status would therefore have no practical [legal] effect." 38 F.4th at 423.

2. The panel's square conflict with two other circuits, and its disagreement with other Supreme Court and circuit precedents, warrants en banc review.

The panel's decision will unnecessarily and incorrectly require the district court to adjudicate plaintiff's constitutional claims centering on the executive branch's national-security determinations with respect to an important counter-terrorism program. Courts should be particularly reluctant to wade into such matters, where "the lack of competence on the part of the courts is marked." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010). That is all the more so here, where the panel held that plaintiff has a live challenge to the government's *initial* decision to put plaintiff on the No Fly List — allegedly made twelve or more years ago — and the

20

district court would need to examine intelligence and information considered years ago and assess it in the context of a threat environment that may have been rendered obsolete in the intervening years. It is hard to imagine a task less suited to the judiciary.

Moreover, because the panel held that a plaintiff can state a redressable Article III injury based solely on the government's *initial* No Fly List determination, regardless of current status, its decision potentially opens the door to a vast new category of claims. Under the panel's theory, a plaintiff who could credibly allege that he or she was on the No Fly List at any prior point in time would have standing to seek a declaratory judgment to redress the alleged reputational harms caused by a decision that has no present or future legal consequences. Indeed, the panel's decision may well open that door to challenges to the government's initial decision to put a plaintiff on *any* government watchlist.

Even before district courts could reach the merits in this potentially enormous new category of cases, moreover, they would need to resolve

21

time-consuming, complex, and contentious privilege questions concerning

an administrative record that will almost always involve classified

information, law-enforcement privileged information, and/or statutorily

protected Sensitive Security Information (49 U.S.C. § 114(r)).  The panel's

erroneous decision may force district courts to spend scarce judicial

resources adjudicating these questions, as well as the merits of

constitutional questions regarding national-security assessments where

judicial competence is minimal, all supposedly to remedy a plaintiff's

stigmatic harm that is not legally cognizable.  This Court should rehear this

case en banc to pretermit that judicial quagmire.

## CONCLUSION

For the reasons stated above, this Court should grant the petition.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

SCOTT ERIK ASPHAUG
  *Acting United States Attorney*

SHARON SWINGLE
  (202) 353-2689
JOSHUA WALDMAN
  (202) 514-0236
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC  20530*

August 2022

23

## CERTIFICATE OF COMPLIANCE

This Petition for Rehearing En Banc complies with the alternative

length limitation in Ninth Circuit Rule 40-1(a) because it is a petition of no

more than 3918 words.  The petition also complies with the typeface and

type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6)

because it was prepared using Microsoft Word 2016 in Palantino Linotype

14-point font, a proportionally spaced typeface.

　　/s/  Joshua Waldman　　　
　　　　JOSHUA WALDMAN
　　　　*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I caused the foregoing

Petition for Rehearing En Banc to be filed with the Court through the

electronic filing system.  Counsel for the appellant is a registered CM/ECF

user and service will be accomplished by the appellate CM/ECF system.


   /s/  Joshua Waldman     

JOSHUA WALDMAN

*Counsel for Appellees*

## STATEMENT OF RELATED CASES

Appellees are not aware of any related cases pending in this Court.

 /s/ Joshua Waldman
JOSHUA WALDMAN
*Counsel for Appellees*

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| YONAS FIKRE,<br>        *Plaintiff-Appellant,*<br><br>      v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION; MERRICK B.<br>GARLAND, Attorney General;<br>ANTONY BLINKEN; CHRISTOPHER A.<br>WRAY; CHARLES H. KABLE IV,<br>Director of the Terrorist Screening<br>Center; PAUL NAKASONE, Director<br>of the National Security Agency;<br>AVRIL D. HAINES, Director of<br>National Intelligence; ALEJANDRO<br>MAYORKAS, Secretary of the<br>Department of Homeland Security;<br>DAVID PEKOSKE, Administrator of<br>the Transportation Security<br>Administration,<br>        *Defendants-Appellees.* | No. 20-35904<br><br>D.C. No.<br>3:13-cv-00899-<br>MO<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted November 15, 2021
Pasadena, California

Filed May 27, 2022

Before:  Marsha S. Berzon and Johnnie B. Rawlinson,
Circuit Judges, and John Antoon II,* District Judge.

Opinion by Judge Berzon

## SUMMARY**

## No Fly List

The panel reversed the district court's dismissal on mootness grounds of Yonas Fikre's substantive due process and non-stigma-related procedural due process No Fly List claims; vacated the district court's dismissal of Fikre's stigma-plus procedural due process claim; and remanded to the district court to consider, in the first instance, whether Fikre stated a viable stigma-plus procedural due process claim considering both his past placement on the No Fly List and his alleged inclusion in the Terrorist Screening Database.

The panel held that because the government failed to follow the instructions given by this Court the last time Fikre's case was before the court, *see Fikre v. FBI* (*Fikre I*), 904 F.3d 1033 (9th Cir. 2018), the district court erred by dismissing as moot Fikre's No Fly List claims.  In *Fikre I*,

---

*  The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

**  This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the Court held that an exception to mootness – the voluntary cessation doctrine – applied to Fikre's No Fly List claim. On remand, FBI Supervisory Special Agent Christopher Courtright filed a declaration in support of the government's motion to dismiss. The panel held that the Courtright Declaration did not provide the assurances specified by *Fikre I* as adequate to overcome the voluntary cessation to mootness. The government has assured Fikre only that he does not currently meet the criteria for inclusion on the No Fly List. It has not repudiated the decision to place Fikre on the list, nor has it identified any criteria for inclusion on the list that may have changed. Because *Fikre I* governs, the district court should not have dismissed the No Fly List due process claims as moot.

The panel held that 49 U.S.C. § 46110(a) did not divest the district court of jurisdiction over Fikre's No Fly List claims. Section 46110, as relevant here, concerns judicial review of orders issued by the TSA Administrator. If Fikre's lawsuit challenges an order by the TSA Administrator, as the government contends, then the district court would lack jurisdiction over this claim. But if his lawsuit challenges the conduct of another agency, such as the Terrorist Screening Center, then § 46110 is inapplicable. The panel held that Fikre was not challenging the TSA Administrator's decision refusing to remove him from the No Fly List under the Department of Homeland Security's Travel Redress Inquiry Program process, he was challenging the Screening Center's decision to place him on the No Fly List in the first place.

Fikre also appealed the district court's dismissal of his complaint for failure to state a cognizable stigma-plus procedural due process claim. Under the "stigma-plus" test of *Hart v. Parks*, 450 F.3d 1059, 1069-70 (9th Cir. 2006), a plaintiff who has suffered reputational harm at the hands of

the government may assert a cognizable liberty interest for procedural due process purposes if the plaintiff "suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" Because the district court erred by dismissing as moot Fikre's claims pertaining to his placement on the No Fly List, the panel vacated the district court's dismissal of Fikre's stigma-plus claim and remanded for the district court to consider whether Fikre had a viable procedural due process claim when his No Fly List-related injuries were also considered.

Finally, the panel considered the scope of remand. The panel held that that both Fikre's substantive due process and non-stigma-related procedural due process claims pertaining to his placement by the Screening Center on the No Fly List, and his alleged placement in the Database, will be before the district court on remand. Any substantive due process claims pertaining to his placement in the Database will not.

## COUNSEL

Brandon B. Mayfield (argued), Law Office of Brandon Mayfield, Beaverton, Oregon; Gadeir I. Abbas (argued), Lena F. Masri, and Justin Sadowsky, Cair Legal Defense Fund, Washington, D.C., for Plaintiff-Appellant.

Joshua Waldman (argued) and Sharon Swingle, Appellate Staff; Scott Erik Asphaug, Acting United States Attorney; Brian M. Boynton, Acting Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

## OPINION

BERZON, Circuit Judge:

For a second time, Plaintiff-Appellant Yonas Fikre appeals the district court's dismissal of his lawsuit alleging that the Federal Bureau of Investigation violated his substantive and procedural due process rights by placing and maintaining him in the Terrorist Screening Database and on its constituent No Fly List. After the government removed Fikre from the No Fly List and submitted a declaration stating that Fikre would "not be placed on the No Fly List in the future" based on "currently available information," the district court dismissed as moot Fikre's claims pertaining to his inclusion on the No Fly List. The district court then dismissed Fikre's claims pertaining to his inclusion in the broader Terrorist Screening Database on the ground that he failed to state a cognizable stigma-plus procedural due process claim.

Because the government has failed to follow the instructions given by this Court the last time Fikre's case was before us, *see Fikre v. FBI* (*Fikre I*), 904 F.3d 1033 (9th Cir. 2018), we hold that the district court erred by dismissing as moot Fikre's No Fly List claims. We also hold that 49 U.S.C. § 46110(a) does not divest the district court of jurisdiction over Fikre's No Fly List claims. We remand to the district court to consider, in the first instance, whether Fikre's complaint states a viable substantive or procedural due process claim with respect to his inclusion on the government's watchlists when his Database and No Fly List allegations are considered together.

## I. Background

### A. The Terrorist Screening Database

In 2003, President George W. Bush executed Homeland Security Presidential Directive 6, which instructed the Attorney General to "establish an organization to consolidate the Government's approach to terrorism screening." Homeland Security Presidential Directive-6—Directive on Integration and Use of Screening Information to Protect Against Terrorism, 39 Weekly Comp. Pres. Doc. 1234 (Sept. 16, 2003). Pursuant to that directive, the Attorney General created the Terrorist Screening Center ("the Screening Center"), a multi-agency entity administered by the FBI that consolidates the United States government's terrorist watchlists into a single database—the Terrorist Screening Database ("TSDB" or "Database"). "The TSDB is maintained by the" Screening Center, which places an individual in the Database "when there is 'reasonable suspicion' that he or she is a known or suspected terrorist." *Kashem v. Barr*, 941 F.3d 358, 365 (9th Cir. 2019). After a United States government agency or a foreign partner with whom the United States shares terrorist screening information nominates an individual for inclusion in the Database, the Screening Center reviews the nomination and determines whether to add the individual to the Database. Fikre alleges that the final authority to accept, reject, or modify a nomination to the Database rests with the Screening Center alone and that the Screening Center does not notify individuals about their nomination or inclusion in the Database.

Once individuals have been placed in the Database, the Screening Center sorts them into constituent lists, used by a different government agency—the Transportation Security Administration ("TSA")—for screening purposes. The No

Fly List, the most restrictive of these lists, is reserved for individuals in the Database whom the Screening Center has determined pose a threat of committing an act of international or domestic terrorism, including acts of terrorism using aircraft or against U.S. government facilities. *Kashem*, 941 F.3d at 365–66. "Federal departments and agencies submit nominations for inclusion on the No Fly List, and [the Screening Center] decides which individuals to include." *Id.* at 365. After the Screening Center decides to place someone on the No Fly List, TSA prohibits those individuals from boarding commercial aircraft that fly over United States airspace. *Id.*; *see* 49 C.F.R. § 1560.105(b)(1).

Individuals included in the Database who are not on the No Fly List are generally permitted to board commercial aircraft but are subject to enhanced security screenings at airports and border crossings. In addition to the standard metal detector, advanced imaging technology, or pat-down screening applied to all air passengers, enhanced screening for individuals included in the Database can include individual searches, physical inspection of the inside of their luggage, examination of their electronics to ensure that any devices can be turned on, and screening of their property for traces of explosives. Fikre also alleges that, when individuals in the Database are at border crossings, the government searches and copies the contents of their electronic devices, and that the government assigns them "handling codes." The handling codes, Fikre alleges, provide instructions for law enforcement officers about how to treat someone listed in the Database during an encounter, and can require "their arrest or other adverse treatment" during such encounters. He also alleges that the government bars individuals in the Database from access to employment with federal agencies and certain industries, and that the government disseminates the Databases' lists to government

agencies around the country and to foreign governments. The government does not disclose the criteria for inclusion in the Database.

To permit individuals to challenge their inclusion on the No Fly List and the Database, the TSA administers the Department of Homeland Security's Traveler Redress Inquiry Program ("DHS TRIP"). *See* 49 U.S.C. §§ 44903(j)(2)(C)(iii)(I), (j)(2)(G)(i); *id.* §§ 44926(a), (b)(1); 49 C.F.R. §§ 1560.201–207. Under the DHS TRIP process, individuals included on the No Fly List may ask why they were placed on the No Fly List. If they do so, they will be provided with a letter identifying the specific reason(s) for their listing, as well as an unclassified summary of information supporting that listing. The TSA Administrator then has the authority, in light of these materials and a report submitted by the Screening Center's Redress Office, to remove an individual from or maintain an individual on the No Fly List. Fikre also alleges that, independently of the DHS TRIP process, "[the Screening Center] periodically reviews its TSDB listings and No Fly List annotations" and "occasionally imposes or removes No Fly List annotations."

With respect to individuals in the Database who are not also on the No Fly List, the procedures are different. Following a traveler inquiry regarding inclusion in the Database, the Screening Center Redress Office may decide whether to remove the individual from the Database, but the government neither confirms nor denies a person's inclusion in or deletion from the Database. Nor does the government provide individuals in the Database with the underlying reasons or intelligence justifying the individual's inclusion in the Database.

## B. Factual and Procedural History

Yonas Fikre is a naturalized U.S. citizen of Eritrean descent.[1]   At some point in late 2009 or early 2010, Fikre moved to Sudan and began a business venture that involved selling consumer electronic products in East Africa.  During an April 2010 visit to the U.S. embassy in Sudan, Fikre was approached by two FBI agents.  The agents interrogated him concerning his association with a mosque in Portland, Oregon, where he used to live.   In the course of that interrogation, the FBI agents informed Fikre that he had been placed on the No Fly List but suggested that they would remove him from the list if he agreed to become an FBI informant.  Fikre refused.

Several months later, Fikre traveled on business to the United Arab Emirates.   There, UAE police arrested, imprisoned, and tortured him.  In the course of his detention, UAE police interrogated him concerning his association with the Portland mosque.  During one interrogation, a UAE officer told Fikre that the FBI had requested his detention and interrogation.

Fikre was eventually released from detention in the UAE.  Unable to fly home to the United States because of his No Fly List status, he traveled to Sweden, where he applied for asylum.  Fikre eventually began the process of seeking to modify his No Fly List status through the DHS

---

[1] Because we are reviewing the district court's grant of a motion to dismiss, "we recite the facts as alleged in [Fikre's] complaint, and assume them to be true." *Brooks v. Clark County*, 828 F.3d 910, 914 n.1 (9th Cir. 2016).

TRIP procedures.[2]  On February 14, 2015, the Swedish government returned Fikre to Portland by private jet.

In 2013, before leaving Sweden and before filing his DHS TRIP inquiry, Fikre filed this lawsuit, alleging that the United States government had violated his substantive and procedural due process rights under the Fifth Amendment by including him on the No Fly List and providing inadequate means for him to challenge that designation.  As the litigation was proceeding, in January 2014 and again in March 2015, the TSA informed Fikre that no change to his No Fly List status was warranted.  A little over a year later, however, while the government's motion to dismiss Fikre's complaint was pending, the government filed a notice in the district court stating, without explanation, that the Screening Center had notified the government that Fikre "has been removed from the No Fly List."  Based on that notice, the district court dismissed Fikre's due process claim as moot.

Fikre appealed the district court's mootness holding to this Court, and we reversed.  In *Fikre I*, we held that an exception to mootness—the "voluntary cessation" exception—applied to Fikre's No Fly List claim because "the government remain[ed] practically and legally 'free to return to [its] old ways' despite abandoning them in the ongoing litigation."  904 F.3d at 1039 (second alteration in original) (quoting *United States v. W.T. Grant Co.*, 345 U.S.

---

[2] While Fikre was in Sweden, the United States in 2012 indicted him and two other individuals for conspiracy to structure monetary transfers. Fikre alleges this indictment was instigated because he had publicized his inclusion on the No Fly List and his subsequent detention in the UAE. Fikre also alleges that the government brought that prosecution in part based on surveillance of his telephone calls, text messages, and emails that had been conducted sometime in 2010 without a warrant or probable cause.

629, 632 (1953)).  In particular, we emphasized that the government had neither "assured Fikre that he will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place" nor "verified the implementation of procedural safeguards conditioning its ability to revise Fikre's status on the receipt of new information."  *Id.* at 1040.  "Absent an acknowledgment by the government that its investigation revealed Fikre did not belong on the list, and that he will not be returned to the list based on the currently available evidence," we determined, "vindication in this action would have actual and palpable consequences for Fikre."  *Id.*

On remand, the government again moved to dismiss Fikre's complaint, then in its sixth amended version.[3]  FBI Supervisory Special Agent Christopher Courtright filed a declaration (the "Courtright Declaration") in support of the government's motion to dismiss.  In addition to providing an overview of the Database, the Courtright Declaration states that Fikre "was placed on the No Fly List in accordance with applicable policies and procedures"; that on May 6, 2016, "[the Screening Center] advised counsel for the Defendants" that Fikre "had been removed from the No Fly [L]ist"; that Fikre "was removed from the No Fly List upon determination that he no longer satisfied the criteria for placement on the No Fly List"; and that Fikre "will not be placed on the No Fly List in the future based on the currently available information."

In its motion to dismiss, the government argued that the Courtright Declaration's statement that Fikre would not be

---

[3] In this version of the complaint, Fikre alleged that the government violated his substantive and procedural due process rights by placing and maintaining him both on the No Fly List and in the Database generally.

placed back on the No Fly List "based on the currently available information" "satisfies one of the [*Fikre I*] panel's concerns because it unequivocally demonstrates that there *are* 'procedural hurdles to reinstating [Plaintiff]' on the No Fly List based solely on the facts already known.'" "To the extent that the Ninth Circuit panel determined that the Government must also 'renounce[]' its prerogative to place [Fikre] on the No Fly List in the first place," however, the government "respectfully disagree[d]." (first alteration in original). The government instead maintained that, because "watchlisting decisions are based on current assessments of the risks posed by particular individuals" and "evaluations change as the available information changes," it was "inappropriate" for this Court to require "an acknowledgement by the government that its investigation revealed [Fikre] did not belong on the list." Echoing the Courtright Declaration, the government reiterated that "the fact that a person was removed from the watchlist or one of its subsets does not mean that the original placement was in error or unlawful."

On November 14, 2019, the district court heard oral argument on the government's motion to dismiss. Ruling from the bench, the district court held that Fikre's due process claims pertaining to his inclusion on the No Fly List were moot in light of the Courtright Declaration, which the district court described as a "barrier . . . to putting him back on the list."[4]  But the district court granted Fikre leave to amend his complaint to allege additional facts regarding

---

[4] The district court framed this issue as one of "standing" but later clarified, in the written order dismissing Fikre's Seventh Amended Complaint (the operative one in this appeal), that the government "had met their burden under the voluntary cessation doctrine as laid out by the Ninth Circuit's decision in this case."

ongoing reputational injuries he has suffered by virtue of his alleged inclusion in the Database, which the district court indicated could serve as an independent basis for a due process claim.

On December 18, 2019, Fikre filed his Seventh Amended Complaint. The Seventh Amended Complaint added allegations that Fikre's reputation was harmed when, due to his status as an individual listed in the Database, he was subjected to enhanced screening on two flights in 2016—one from Seattle to Mecca to complete a religious pilgrimage, the other to San Diego for a family trip. Specifically, Fikre alleges that, due to his inclusion in the Database, he was subjected to enhanced screening at several points during these trips.

For example, when he checked in for his flight from Seattle to Mecca, the ticketing agent had to call federal agents for "individualized permission to print Fikre's boarding pass" and stamped his boarding pass with an "SSSS" notation, which Fikre alleges "indicates a person's TSDB status." As Fikre was going through airport security in Seattle, the TSA, "in accordance with his TSDB status," subjected Fikre "to invasive and disparate screening," which was witnessed by his co-travelers. And at the gate in Seattle, agents asked him to step aside and again searched him, patted him down, and swabbed his belongings in front of his co-travelers. Fikre alleges that similar inspections took place when he boarded a connecting flight in Chicago; when he boarded his flight leaving Saudi Arabia to return to the United States; and when he flew to San Diego with his family on a separate 2016 trip. The Seventh Amended Complaint seeks declaratory and injunctive relief, including a declaration that the government violated his due process rights by placing him on the No Fly List and an injunction

requiring that the government remove him from the Database and "repudiate in its entirety the decision to add Fikre to the TSDB with a No Fly List annotation and maintain him there for approximately five years."

Once more, the government moved to dismiss Fikre's complaint. The district court granted the motion. The district court first reiterated that it had already dismissed as moot Fikre's due process claims "insofar as they were based on a theory of present or future injury to a travel-related liberty interest" due to his inclusion on the No Fly List. Turning to Fikre's Database-related claims, the district court dismissed the claim that the government had violated his Fifth Amendment substantive due process rights by placing him in the Database.

With regard to his procedural due process claim, Fikre argued that he had pleaded a cognizable "stigma-plus" liberty interest stemming from his alleged inclusion in the Database.[5] Specifically, Fikre argued that the government harmed his reputation by subjecting him to enhanced screenings during his 2016 flights to Mecca and San Diego and that, in connection with those reputational harms, Fikre's watchlist status led to his detention and torture in the UAE, his prohibition from flying over United States airspace while he was on the No Fly List, his 2012 indictment, the unconstitutional surveillance of his phone and email

---

[5] As explained in more depth in Part II.C of this opinion, a "stigma-plus" claim allows a plaintiff to recover for reputational harm inflicted by the government where the plaintiff can show that he was "stigmatized in connection with the denial of a 'more tangible' interest." *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Fikre's appeal—to the extent that it challenges his inclusion in the Database—focuses exclusively on this type of procedural due process claim.

communications in 2010, interference with his religious exercise, and several other burdens.

The district court agreed that the government had publicly stigmatized him "by subjecting him to intensive, repeated, non-random security screenings in front of members of his community and family during his 2016 Mecca and San Diego trips," and that Fikre therefore suffered a reputational injury sufficient to support a "stigma-plus" procedural due process claim. The court concluded, however, that Fikre failed to state a "plus" factor—the alteration or deprivation of a more tangible right or status—caused by or in connection with that 2016 reputational harm, as required by the governing case law. *See Hart*, 450 F.3d at 1069–70. In particular, the district court noted that, although he was subjected to enhanced screening during his 2016 trips, Fikre was not "prevented or significantly impeded from traveling during those two trips" and that, aside from enhanced screening, Fikre "has not alleged that he has personally suffered any" of the other consequences of inclusion in the Database, "such as the denial of credentials or employment" with federal agencies or certain industries. As for Fikre's other asserted "plus" factors, the district court concluded that "the surrounding circumstances of each violation ha[d] absolutely nothing to do with the events of Mr. Fikre's 2016 reputational injury"; they involved "different actors," "occurred years apart," and "happened for a host of possible different reasons." The district court therefore dismissed Fikre's procedural due process claim relating to his inclusion in the Database.

Fikre now appeals both the district court's dismissal on mootness grounds of his No Fly List-related claims and the district court's dismissal of his stigma-plus procedural due process claim related to his inclusion in the Database.

## II. Discussion

### A. Mootness

We first address whether the district court erred by once again dismissing as moot Fikre's due process claims relating to his inclusion on the No Fly List. We conclude it did.

The Courtright Declaration submitted by the government on remand does not provide the assurances specified by *Fikre I* as adequate to overcome the voluntary cessation exception to mootness. And because *Fikre I* governs, the district court should not have dismissed the No Fly List due process claims as moot.

"Article III of the Constitution," as we explained in *Fikre I*, "grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Fikre I*, 904 F.3d at 1037 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013)). When the issues presented by a case "are no longer 'live'" or when "the parties lack a legally cognizable interest in the outcome," a case becomes moot and therefore no longer constitutes a "Case" or "Controversy" under Article III. *Id.* (quoting *Already*, 568 U.S. at 91). The "voluntary cessation of allegedly illegal conduct," however, does not moot a case unless the party asserting mootness satisfies the "heavy burden" of making it "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 1037, 1039 (first quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); then quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000); and then quoting *Already*, 568 U.S. at 91).

Under the law of the case doctrine, ordinarily, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in

the same case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (quoting *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016)).[6]  Accordingly, absent the applicability of exceptions, "one panel of an appellate court will not reconsider matters resolved in a prior appeal to another panel in the same case." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995).  This Court specified in *Fikre I* what the government was required to do to show that it is "absolutely clear the allegedly wrongful behavior"—Fikre's inclusion on the No Fly List— "could not reasonably be expected to recur."  Accordingly, we assess whether the Courtright Declaration satisfies the criteria identified in *Fikre I* and thereby overcomes the voluntary cessation exception.  *Fikre I*, 904 F.3d at 1039 (quoting *Already*, 568 U.S. at 91).  Under this analysis, the Courtright Declaration does not do the job.

First, like the government's 2016 notice, the Courtright Declaration treats Fikre's removal from the No Fly List essentially as "an individualized determination untethered to any explanation or change in policy, much less an abiding change in policy."  *Id.* at 1039–40.  That notice stated, without more, that the government's lawyers were "advised by the Terrorist Screening Center that [Fikre] has been removed from the No Fly List."  *Id.* at 1040 (alteration in original).  *Fikre I* noted that the government had recently determined, at the conclusion of the DHS TRIP process, that Fikre still posed "a threat to civil aviation or national

---

[6] There are exceptions to the law of the case doctrine: when "the first decision was clearly erroneous," "an intervening change in the law has occurred," the evidence at the later stage of the case "is substantially different," "other changed circumstances exist," or "a manifest injustice would otherwise result." *Askins*, 899 F.3d at 1042 (quoting *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998)).  None of these exceptions applies here.

security." *Id.* Although the government then removed Fikre from the No Fly List "two months after briefing was completed on the government's motion to dismiss Fikre's lawsuit," the lack of "explanation or any announced change in policy" suggested "that Fikre's removal from the No Fly List was more likely an exercise of discretion than a decision arising from a broad change in agency policy or procedure." *Id.*

The Courtright Declaration, similarly, provides no explanation for Fikre's inclusion on or removal from the No Fly List and, far from announcing a change in policy regarding inclusion on the No Fly List, indicates that there has been none. So it continues to appear that Fikre's removal from the No Fly List was "more likely an exercise of discretion than a decision arising from a broad change in agency policy or procedure." *Id.* The only explanation the Declaration provides is the statement that Fikre "was removed from the No Fly List upon determination that he no longer satisfied the criteria" for inclusion on the list. But that sentence neither explains what those criteria are nor identifies any change to the policies, procedures, and criteria under which Fikre was placed on the No Fly List in the first place. The clear implication from the Courtright Declaration, then, is that the government has not changed its policies but that *something else* has changed to warrant Fikre's change in status, apparently something about Fikre.

Second, *Fikre I* recognized that "the government's unambiguous renunciation of its past actions can compensate for the ease with which it may relapse into them." *Id.* at 1039. Because the government there had "not repudiated the decision to add Fikre to the No Fly List and maintain him there for approximately five years," *id.* at 1040, there was no basis to conclude in *Fikre I* that "the

current permission Fikre has to travel by air" was
"'entrenched' or 'permanent,'" *id.* (quoting *McCormack v.
Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015)), or that the
government had "acquiesce[d] to the righteousness of
Fikre's contentions," *id.* "Absent an acknowledgment by the
government that its investigation revealed Fikre did not
belong on the list, and that he will not be returned to the list
based on the currently available evidence," Fikre remained
stigmatized "as a known or suspected terrorist." *Id.*

The Courtright Declaration does not satisfy the heavy
burden of making it absolutely clear that the government
would not in the future return Fikre to the No Fly List for the
same reason it placed him there originally. Like the
government's 2016 notice, it neither "repudiate[s] the
decision to add Fikre to the No Fly List" nor "assure[s] Fikre
that he will not be banned from flying for the same reasons
that prompted the government to add him to the list in the
first place." *Id.* In fact, it does the opposite: instead of
renouncing the government's original decision, the
Courtright Declaration doubles down on it, maintaining that
Fikre "was placed on the No Fly List in accordance with
applicable policies and procedures." Indeed, in its motion to
dismiss Fikre's Sixth Amended Complaint and its brief on
appeal, the government expressly disavowed any intent to
repudiate its decision to place Fikre on the No Fly List
originally, maintaining that "there is no such invariable
requirement for demonstrating mootness."

Third, *Fikre I* emphasized that another reason the
government could not evade the voluntary cessation
exception to mootness was because it had not "verified the
implementation of procedural safeguards conditioning its
ability to revise Fikre's status on the receipt of new
information." *Id.* at 1040. Likewise, the Courtright

Declaration provides no sign that any such procedural safeguards have been implemented. To the contrary, that Declaration refers to "applicable policies and procedures" as if static from the time Fikre was placed on the No Fly List until now.

The government nevertheless maintains that, by providing that Fikre "will not be placed on the No Fly List in the future based on the currently available information," the Courtright Declaration "condition[s] its ability to revise Fikre's status on the receipt of new information." That statement, however, does not ensure that Fikre "will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place." *Fikre I*, 904 F.3d at 1040. Instead, the Declaration indicates only that Fikre "*no longer* satisfie[s]" the government's criteria, based on information available now regarding Fikre's *current* circumstances. (emphasis added). Should Fikre's circumstances change back to what they were when he was first placed on the No Fly List, he could be placed on the list again "for the same reasons that prompted the government to add him to the list in the first place." *Id.*

We disagree with the government's contention that the phrase "currently available information" "necessarily subsumes the information known" when Fikre was first placed on the No Fly List and that any decision to add him to the List again "would necessarily be based on a new factual record." The government insists elsewhere in its brief that it need not "declare that plaintiff should not have been placed on the No Fly List even in the past, based on the information available to the government at that time" because No Fly List decisions "are highly fact-dependent assessments" based "on the information available to the government *at that time*." (emphasis added). Likewise, in

its motion to dismiss Fikre's Sixth Amended Complaint, the
government maintained that "watchlisting decisions are
based on current assessments of the risks posed by particular
individuals" and that the Courtright Declaration addressed
only "the Government's *current* assessment of Plaintiff," not
its assessment at "the point at which Plaintiff was originally
nominated." In light of these additional statements, the
government's careful choice of words in the sentence first
quoted in this paragraph appears to connote only that Fikre
will not be placed on the No Fly List now based on what he
did in the past, not that he would not be placed on the List if
"a new factual record" showed that he was engaging in the
same or similar conduct once again.

In sum, the government has assured Fikre only that he
does not *currently* meet the criteria for inclusion on the No
Fly List. It has not "repudiated the decision" to place Fikre
on the list, nor has it identified any criteria for inclusion on
the list that may have changed. Thus, there is no reason to
believe that the government would not place Fikre on the list
"for the same reasons that prompted the government to add
him to the list in the first place." *Fikre I*, 904 F.3d at 1040.
As before, "the government remains practically and legally
'free to return to [its] old ways'" the moment Fikre again
meets whatever criteria he satisfied initially. *Id.* at 1039
(alteration in original) (quoting *W.T. Grant*, 345 U.S.
at 632).

Aside from relying on the Courtright Declaration, the
government also asserts that because Fikre's "removal from
the No Fly List is now five years old," "[w]hat may have
appeared in the prior appeal to have been a 'tentative[]'
discretionary decision is now more clearly an 'entrenched'
agency action." The government also contends this case is

now moot because we stated that "there is no bright-line rule for application of the voluntary cessation doctrine."

These arguments do not fly.  It is true, of course, that there is no bright-line rule for applying the voluntary cessation doctrine, *Fikre I*, 904 F.3d at 1039, and that the passage of time may support the conclusion that the government has abandoned its allegedly illegal conduct for good, *see, e.g.*, *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013).   But for the reasons just explained, the government's decision to remove Fikre from the No Fly List remains "an individualized determination untethered to any explanation or change in policy, much less an abiding change in policy," notwithstanding the passage of time since Fikre's change of status. *Fikre I*, 904 F.3d at 1039–40.  And even though there is no bright-line rule for the application of the voluntary cessation doctrine as a general matter, this Court did draw some applicable lines for *this case* in *Fikre I*.  Again, absent exceptions not at issue here, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Applying *Fikre I*'s analysis, Fikre's No Fly List claims are not moot.

## B.  Subject Matter Jurisdiction

The government contends that, even if Fikre's No Fly List due process claims are not moot, we must affirm the district court's dismissal of those claims on the ground that 49 U.S.C. § 46110 divests the district court of subject matter jurisdiction over those claims.  Not so.

Section 46110, as relevant here, concerns judicial review of orders issued by the TSA Administrator.  Specifically, § 46110 states that "a person disclosing a substantial interest

in an order issued by" the TSA Administrator "under this part . . . may apply for review of the order by filing a petition for review" in an appropriate court of appeals. 49 U.S.C. § 46110(a). "The petition must be filed not later than 60 days after the order is issued," *id.*, and the court of appeals "has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order," *id.* § 46110(c). So, if Fikre's lawsuit challenges an order by the TSA Administrator, as the government contends, then the district court would lack jurisdiction over his claims. But if his lawsuit challenges the conduct of another agency, such as the Screening Center, then § 46110 is inapplicable.

To support its argument that Fikre's claims are barred by § 46110, the government relies on *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019). *Kashem* concerned a lawsuit filed by a group of individuals on the No Fly List challenging both the sufficiency of the procedures for disputing their inclusion on the No Fly List and, substantively, their "continued inclusion on the No Fly List." *Id.* at 364, 367. After they were prevented in 2010 from boarding commercial flights, the plaintiffs filed grievances through the DHS TRIP process and a lawsuit alleging that their apparent inclusion on the No Fly List violated their substantive due process rights. *See Latif v. Holder*, 686 F.3d 1122, 1126 (9th Cir. 2012).[7] As a result of the *Latif* litigation, the government in 2015 revised the DHS TRIP procedures. *Kashem*, 941 F.3d at 367. Those revised procedures made the TSA Administrator alone—not the Terrorist Screening Center—responsible for issuing a

---

[7] The *Kashem* and *Latif* appeals involved the same group of plaintiffs and the same underlying lawsuit. The plaintiffs in *Kashem* were the four plaintiffs from *Latif* still on the No Fly List after the government reevaluated their statuses in light of *Latif*. *Kashem*, 941 F.3d at 367 & n.2.

final order maintaining a traveler on the No Fly List at the conclusion of the DHS TRIP process.  *Id.* at 391.

Evaluating the *Kashem* plaintiffs' challenge to their continued No Fly List status under those revised procedures, the TSA Administrator "issued final orders maintaining each plaintiff on the list."  *Id.* at 367–68.  The *Kashem* plaintiffs—the subset of the plaintiffs from *Latif* who were still on the No Fly List—then returned to the district court to challenge their continued inclusion on the No Fly List.  *Id.* at 367–68.  The district court dismissed their substantive due process claims for lack of subject matter jurisdiction, citing § 46110.  *Id.* at 369.

This Court's opinion in *Kashem* affirmed the dismissal.  *Id.* at 390–91.  We explained that, "[b]efore the 2015 revisions to the DHS TRIP procedures," § 46110 did not bar district court review of a No Fly List order, because "[the Screening Center]—not TSA—actually review[ed] the classified intelligence information about travelers and decide[d] whether to remove them from the list."  *Id.* at 390 (quoting *Latif*, 686 F.3d at 1128).  Under the revised DHS TRIP procedures, however, "the TSA Administrator is solely responsible for issuing a final order maintaining a traveler on the No Fly List" at the conclusion of the DHS TRIP process.  *Id.* at 391.  The Screening Center submits only a recommendation and supporting materials to the TSA Administrator, to aid in that decision.  *Id.*  So, for an individual challenging a No Fly List decision made at the conclusion of the DHS TRIP process, *Kashem* explained, "[i]t is no longer the case" that "any remedy must involve [the Screening Center]."  *Id.*  *Kashem* thus held that § 46110 governed the plaintiffs' suit challenging the TSA Administrator's final order maintaining them on the No Fly List.  *Id.*

The government argues that "*Kashem* is squarely on point." It is not. Unlike the plaintiffs in *Kashem*, Fikre is not challenging the *TSA Administrator's* decision refusing to remove him from the No Fly List under the DHS TRIP process. He is challenging the *Screening Center's* decision to place him on the No Fly List in the first place.[8]

As Fikre explains in his briefing before this Court, his challenge concerns "the entire watchlisting system that *led to his listing*, including both the *initial decision and process used to place him on the No Fly List*." (emphasis added). That characterization of Fikre's action is borne out by his Seventh Amended Complaint. With respect to his procedural due process claim, Fikre alleges that the government "*placed* Plaintiff's name in the Terrorist Screening Database and on its No Fly List subcomponent" and asserts that he "has experienced economic, reputational,

---

[8] Before the 2015 changes to the DHS TRIP process, *Latif* held that § 46110 did not divest the district court of jurisdiction to hear a substantive due process challenge to inclusion on the No Fly List. 686 F.3d at 1127. In so holding, *Latif* observed in a footnote that, "[w]ith regard to the applicability of § 46110, there is no meaningful difference between the 'initial placement' of a name on the List and 'continued placement' or 'removal'" because (at that time) "[the Screening Center] decide[d] both whether travelers are placed on the List and whether they stay on it," even in the course of the DHS TRIP process. *Id.* at 1127 n.6; *see id.* at 1125–26. After the 2015 revisions to the DHS TRIP process, however, there *is* a "meaningful difference" between an individual's "initial placement" on the No Fly List, carried out by the Screening Center, and an individual's "continued placement" or "removal" pursuant to DHS TRIP, carried out by the TSA Administrator. *Id.* at 1127 n.6. In its brief in *Kashem*, the government made exactly that distinction, arguing that the plaintiffs there were "not challenging their inclusion on the No Fly List in the first instance" but rather "their continued inclusion on the No Fly List following review under the revised DHS TRIP procedures." Answering Brief for Appellees at 68, *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019) (No. 17-35634).

physical, and liberty harms due to Defendants' *placement* of his name" on those lists. With respect to his substantive due process claim, Fikre alleges, among other things, that the government "*placed* Plaintiff on the TSDB and No Fly List despite lacking any reasonable suspicion that Plaintiff is a known, suspected, or potential terrorist" and that the government relies on "race, ethnicity, national origin, religious affiliation, and First Amendment protected activities as factors supporting *placement* on the TSDB and No Fly List." (emphasis added). By contrast, Fikre's complaint mentions the DHS TRIP process very little, spending just two paragraphs on Fikre's engagement with that redress process.[9]

In sum, unlike the plaintiffs in *Kashem*, Fikre does not challenge the TSA Administrator's decision made at the end of the DHS TRIP process or seek a court order requiring the TSA Administrator to remove him from the No Fly List.

---

[9] Fikre's complaint notes that the TSA reaffirmed in early 2015 that his name would remain on the No Fly List. But the complaint does not purport to challenge that decision. And although Fikre's complaint mentions the government's "actions in placing *and keeping*" him on the No Fly List, (emphasis added), our understanding is that those references, in the context of Fikre's full complaint, concern the Screening Center's own authority, independent of the DHS TRIP process, to remove individuals from the No Fly List. That independent authority is both alleged in the complaint and confirmed by the government's watchlisting overview document, which states that "[the Screening Center] regularly reviews data in the TSDB" and that, "[i]f it is determined during the quality assurance reviews that a change should be made to a record in the TSDB," the Screening Center "takes steps to clarify the record," including "[a]dditions, modifications, and removals." In any event, to the degree Fikre's complaint can, contrary to our own interpretation, be read to challenge the TSA's decision not to remove him from the No Fly List as part of DHS TRIP review, the district court, and this Court, would lack jurisdiction over that aspect of Fikre's case.

Rather, his claims concern the Screening Center's role in assigning him to the No Fly List in the first place. As in *Ibrahim v. Department of Homeland Security*, 538 F.3d 1250 (9th Cir. 2008), "putting [Fikre's] name on the No-Fly List was an 'order' of an agency *not* named in section 46110," and so "the district court retains jurisdiction to review that agency's order," *id.* at 1255; *see also Mokdad v. Lynch*, 804 F.3d 807, 811–12 (6th Cir. 2015) (distinguishing between a plaintiff's challenge to "the adequacy of the redress process," which "amount[s] to a challenge to a TSA order," and "a direct challenge to his placement by [the Screening Center] on the No Fly List").[10]

## C. Stigma-Plus Procedural Due Process Claim

Fikre also appeals the district court's dismissal of his complaint for failure to state a cognizable stigma-plus procedural due process claim. We remand Fikre's stigma-plus procedural due process claim to the district court to consider in the first instance whether Fikre states a viable procedural due process claim when his placement on the No Fly List is also considered.

To state a procedural due process claim, a plaintiff must allege "(1) a liberty or property interest protected by the

---

[10] The government also contends that *Kashem* erred by distinguishing, for purposes of § 46110, procedural due process claims challenging the sufficiency of DHS TRIP's procedures and substantive challenges to the decision in a final TSA order. 941 F.3d at 391 n.16. As a three-judge panel, we would be bound by this distinction in *Kashem*, were it relevant. *Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1103 (9th Cir. 2020). But it is not. Here, both Fikre's procedural due process and substantive due process claims challenge the Screening Center's decision to place him on the No Fly List, not an order of the TSA Administrator.

Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (alteration in original) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).  Although "[d]amage to reputation alone is not actionable," *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *Paul v. Davis*, 424 U.S. 693, 711–12 (1976)), such reputational harm caused by the government can constitute the deprivation of a cognizable liberty interest if a plaintiff "was stigmatized in connection with the denial of a 'more tangible' interest," *id.* at 1069–70 (quoting *Paul*, 424 U.S. 701–02).  Under this "stigma-plus" test, a plaintiff who has suffered reputational harm at the hands of the government may assert a cognizable liberty interest for procedural due process purposes if the plaintiff "suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2009) (quoting *Paul*, 424 U.S. at 711), *rev'd in part on other grounds*, 562 U.S. 29 (2010)).

Here, the district court permitted Fikre to amend his complaint a seventh time with respect to the theory that he suffered a "stigma-plus" reputational injury by virtue of his alleged inclusion in the Database.  And the district court acknowledged that, "if an individual were to suffer a stigma as a result of their placement on the No Fly List and then were denied the ability to travel due to the No Fly List," that allegation might state a viable stigma-plus claim.  But the district court held the No Fly List-related claims moot and so viewed the "only stigmatic injury for which Mr. Fikre ha[d] established standing" as "the 2016 reputational injury he allegedly suffered as a result of the Mecca and San Diego trips," stemming from his inclusion in the Database.  With the No Fly List claims out of the case, the district court

concluded that any restriction on Fikre's ability to travel was "far too attenuated in both time and circumstance to be deemed as having occurred 'in connection with' his 2016 reputational injury," and so dismissed the stigma-plus claims.

But we have concluded that the district court erred by dismissing as moot Fikre's claims pertaining to his placement on the No Fly List. *See supra* Part II.A. Considering Fikre's placement on the No Fly List and his alleged presence in the broader Database together, both the reputational injuries and the "plus" factors at issue in Fikre's case may be more numerous and more substantial than the district court believed.

Generally, "a federal appellate court does not consider an issue not passed upon below," although we have discretion to do so "where the issue presented is a purely legal one and the record below has been fully developed." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1094 (9th Cir. 2014) (quoting *Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986)). Because both the district court's decision and the parties' briefs on appeal focused their stigma-plus analysis on the stigma and plus factors related to Fikre's 2016 reputational injuries stemming from his status as an individual listed in the Database—not on those factors as they related to the ramifications of his previous No Fly List status—we choose not to exercise that discretion in this case. We therefore vacate the district court's dismissal of Fikre's stigma-plus claim and remand for the district court to consider whether Fikre has a viable procedural due process claim when his No Fly List-related injuries are also considered.

## III.    Scope of Remand

We briefly clarify what claims will be before the district court on remand.

Fikre's Seventh Amended Complaint asserted two causes of action—a Fifth Amendment procedural due process claim and a Fifth Amendment substantive due process claim. Each of those causes of action pertains both to his past placement on the No Fly List and to his alleged current inclusion in the Database.

Fikre raised two issues in his opening brief on appeal. First, Fikre challenged the district court's dismissal as moot of his No Fly List-related claims. Second, Fikre challenged the district court's dismissal for failure to state a claim of his stigma-plus procedural due process claim, relating to his alleged inclusion in the Database. Because Fikre did not challenge the district court's dismissal of his substantive due process claim stemming from his inclusion in the Database, any challenge to that decision has been waived. *See, e.g.*, *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1061 (9th Cir. 2020).

But by appealing the district court's mootness ruling in its entirety, Fikre necessarily preserved both his substantive and non-stigma-related procedural due process challenges to his placement on the No Fly List. The district court ruled on neither challenge on the merits, given its mootness determination. By challenging that determination, Fikre was requesting reinstatement of his operative complaint as to both due process challenges to his placement on the No Fly List; by reversing as to mootness, we confirm that the merits of both challenges as alleged in the operative complaint were properly before the district court and so are to be decided.

The government nonetheless suggested at oral argument that Fikre entirely relinquished any substantive due process claim on appeal.  To support that contention, the government pointed to Fikre's statement in his reply brief, in response to the government's jurisdictional arguments, that his appeal "does not concern Fikre's substantive due process claims" because the district court dismissed them as moot, and that, "[a]s relevant to this appeal, Fikre challenges the No Fly List (and the broader TSDB) on procedural due process grounds."  That statement did not waive Fikre's substantive due process claim as it pertains to his placement on the No Fly List.  Rather, as Fikre's reply brief recognized, the merits of Fikre's No Fly List-specific claims, whether substantive or procedural, are not before this Court because the district court dismissed them as moot and never ruled on them substantively.  Therefore, "[a]s relevant to this appeal" on the merits, only the district court's dismissal of Fikre's separate stigma-plus procedural due process claim was implicated.

As explained, we now hold that the district court erred by dismissing Fikre's No Fly List claims as moot and that § 46110 does not divest the district court of jurisdiction over those claims.  Both Fikre's substantive due process and non-stigma-related procedural due process claims pertaining to his placement by the Screening Center on the No Fly List, as well as his stigma-plus procedural due process claims pertaining both to his placement on the No Fly List and his alleged placement in the Database, will be before the district court on remand.  Any substantive due process claim pertaining to his placement in the Database will not.

## IV.    Conclusion

We reverse the district court's dismissal on mootness grounds of Fikre's substantive due process and non-stigma-

related procedural due process No Fly List claims.  We also vacate the district court's dismissal of Fikre's stigma-plus procedural due process claim and remand to the district court to consider, in the first instance, whether Fikre has stated a viable stigma-plus procedural due process claim considering both his past placement on the No Fly List and his alleged inclusion in the Database.

**REVERSED, VACATED, and REMANDED.**