**No. 20-35904**

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

YONAS FIKRE,

*Plaintiff-Appellant,*

v.

FEDERAL BUREAU OF INVESTIGATION, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Oregon

**APPELLANT YONAS FIKRE'S RESPONSE TO APPELLEES'
PETITION FOR REHEARING EN BANC**

September 20, 2022

Lena F. Masri
Gadeir I. Abbas
Justin Sadowsky
Hannah Mullen
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE Washington,
DC 20003
(202) 742-6420

Brandon Mayfield
LAW OFFICE OF BRANDON
MAYFIELD, LLC
14631 SW Millikan Way Beaverton,
OR 97003 Phone: 503.941.5101
mayfieldbrandon@hotmail.com

*Counsel for Yonas Fikre*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................ii

TABLE OF AUTHORITIES .........................................................iii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................... 2

   I.   Fikre II was a reasonable and correct application of prior precedent. ....... 2

     A.    Fikre II straightforwardly applies the voluntary cessation mootness analysis of Fikre I. .......................................................................... 2

     B.   *Fikre I* was correctly decided. ........................................................ 4

     C. *Fikre II* did not reach the stigma-plus questions the Government complains about. ...................................................................................... 7

   II.   The panel's decision creates no conflict that warrants this Court's review. ...................................................................................... 10

     A.   *Long* presents at most a trivial circuit split. .................................... 10

     B.   *Mokdad* and *Sossamon* not contrary to *Fikre*. .................................. 14

     C.   The Court should not take this case because of broader national security or government deference concerns. .......................................... 15

CONCLUSION ........................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Bell v. City of Boise*, 709 F.3d 890 (9th Cir.2013)........................................... 8, 9

*Elhady v. Kable*, 993 F.3d 208 (4th Cir. 2021) ................................................. 11

*Fikre v. FBI*, 904 F.3d 1033 (9th Cir. 2018)..............................................5, 6, 7

*Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033 (9th Cir. 2018) ................... 5

*Humphries v. Los Angeles*, 554 F.3d 1170 (9th Cir. 2009) ................................. 11

*Ibrahim v. DHS*, 912 F.3d 1147 (9th Cir. 2019) ................................................ 7

*Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). .... 12

*Long v. Pekoske*, 20-1406, Dkt. 53, Supp. App. 15 (May 12, 2021).................. 14

*Long v. Pekoske*, 38 F.4th 417 (4th Cir. 2022) ......................................... passim

*Long v. Pekoske*, Petition for Rehearing en Banc, Dkt. 80, at 9-12 (4th Cir. Aug. 15, 2022).................................................................................................. 15

*Mokdad v. Lynch*, 876 F.3d 167 (6th Cir. 2017) ............................................. 17

*Paul v. Davis*, 424 U.S. 693 (1976) .........................................................10, 11

*Sossamon v. Texas*, 560 F.3d 316 (5th Cir. 2009)........................................... 18

## INTRODUCTION

The Government disagrees with the outcome of *Fikre II*. But, try as it might, it offers no colorable grounds for en banc review. At base, *Fikre I* was a simple decision applying straightforward principles of law, and *Fikre II* was a by-the-book application of *Fikre I*. Nothing about the Panel's decision warrants the attention of the en banc Court.

The Government cannot point to any binding precedent—from either the Supreme Court or this Court—with which *Fikre II* conflicts. So it attempts to manufacture a circuit split between *Fikre II* and *Long v. Pekoske*, a recent Fourth Circuit decision. But *Long* agreed with *Fikre II*'s analysis, and the two cases part ways only in their interpretation of two differently worded declarations. Such a disagreement is not a circuit split and, if it were, it would be the most trivial circuit split imaginable. And as far as the interpretation of the two declarations, *Fikre II*'s interpretation is correct.

Otherwise, the Government barks loudly, arguing that *Fikre II* transgresses broad, general, well-established principles of law and a series of similarly-unconvincing circuit splits. But even a cursory review of those principles and supposed splits shows no bite. *Fikre II* is perfectly consistent with existing law.

1

# ARGUMENT

## I. Fikre II was a reasonable and correct application of prior precedent.

### A. Fikre II straightforwardly applies the voluntary cessation mootness analysis of Fikre I.

*Fikre I* held that "a voluntary change in official stance or behavior moots an action only when it is 'absolutely clear' to the court, considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018) (citations omitted). The Government must meet this burden to overcome the voluntary cessation to mootness exception. *Id.* "Even accepting the government's argument that its notice [of Fikre's removal from the No Fly List] constitutes a 'formal agency action, publicly made, and unequivocally expressed,' the mere announcement that Fikre was removed from the list falls short of meeting the government's burden." *Id.*

*Fikre I* separately held that, even apart from the voluntary cessation exception, Fikre's claim was not moot because his "removal from the No Fly List does not completely and irrevocably eradicate the effects of the alleged violation." *Id.* at 1040 (cleaned up). "Absent an acknowledgment by the government that its investigation revealed Fikre did not belong on the list … Fikre remains … stigmatized as a known or suspected terrorist and as an individual

2

who represents a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so." 904 F.3d at 1040 (cleaned up). Without this vindication, "acquaintances, business associates, and perhaps even family members are likely to persist in shunning or avoiding him despite his renewed ability to travel," creating harm that confers standing. *Id.*

*Fikre II* straightforwardly applied those holdings. As *Fikre II* noted, "the Courtright Declaration treats Fikre's removal from the No Fly List essentially as 'an individualized determination untethered to any explanation or change in policy, much less an abiding change in policy.'" Slip Op. at 17 (quoting *Fikre I*, 904 F.3d at 1039–40. Indeed, "instead of renouncing the government's original decision, the Courtright Declaration doubles down on it, maintaining that Fikre 'was placed on the No Fly List in accordance with applicable policies and procedures.'" Slip Op. at 19. In other words, the FBI told Fikre and the Court that it put Fikre on the watchlist, that it did so correctly, and that it would do it again if the same facts presented itself. But for reasons it would not disclose, the FBI took Fikre off the No Fly List anyway: "The only explanation the Declaration provides is the statement that Fikre 'was removed from the No Fly List upon determination that he no longer satisfied the criteria' for inclusion on the list." Slip Op. at 18. The passive voice cannot excuse the Government from explaining itself. Unless the Government explains to the

Court what factual development led it to remove Fikre from the No Fly List, there is nothing in the record to contradict the Court's determination that "'the government remains practically and legally 'free to return to [its] old ways'' the moment Fikre again meets whatever criteria he satisfied initially." Slip Op. at 21 (citing *Fikre I*, 904 F.3d at 1039) (brackets original).[1]

In other words, *Fikre II* was a faithful application of *Fikre I*, which remains the law of the case.

### B.    *Fikre I* was correctly decided.

The Government's actual dispute is with *Fikre I*. But the time for seeking rehearing en banc of *Fikre I* has long since passed.

Even if a challenge to *Fikre I* was still appropriate, *Fikre I* correctly interpreted this Court's precedents. The Government cites no case in this Circuit or the Supreme Court that either *Fikre* decision transgresses. Rather, the Government cites only two Ninth Circuit decisions and a handful of Supreme Court cases, all for generalized principles with which both *Fikre* decisions are perfectly consistent. Turning to out-of-circuit authority, the Government fix-

---

[1] Even if the Government had provided a good faith showing it intended to keep Fikre off the watchlist, this Court's own precedents illustrate the Government often lacks the competency to keep such a word. In *Ibrahim v. DHS*, 912 F.3d 1147 (9th Cir. 2019), this Court recounted how an FBI agent accidentally put someone on the No Fly List and then for the next decade the Government repeatedly kept re-adding her and her daughter to the list after they got themselves removed, and then refused to disclose the comedy of errors to the Court. *Id.* at 1164.

ates on a later-decided (if just) Fourth Circuit decision, *Long v. Pekoske*, 38 F.4th 417 (4th Cir. 2022), to argue that the *Fikre* decisions were wrong. But *Long* agreed with the "general framework" of *Fikre I*, concluding only that this Court's application of that framework to the specific facts before it was unduly strict. *Id.* at 424.

The Government also claims (at 15-16) that the *Fikre* voluntary cessation analysis fails to give appropriate deference to the Government. But the Government is not entitled to absolute deference, and this Court has rejected the argument that the Government is exempt from the voluntary cessation exception to mootness. *Bell v. City of Boise*, 709 F.3d 890, 898–99 & n. 13 (9th Cir.2013). The Government continues to argue that its treatment of Fikre was appropriate, that the No Fly List is valid and constitutional, and that Fikre will be treated like anyone else under the No Fly List and watchlisting system. The Government also refuses to explain why despite all that Fikre is now no longer currently being affected by the challenged law, or provide any context to the Court to aid the Court in determining how likely replacement on the list might reoccur. As a result, the Government cannot meet its "heavy" burden under *Bell* to show that the voluntary cessation exception does not apply. 709 F.3d at 898–99 & n.13.

The Government complains outright (at 15-16) that the *Fikre* decisions

articulate a "nearly impossible voluntary-cessation burden" for the Government to intentionally moot out cases. Not so. The Government can, as *Fikre I* suggests, make an abiding change in policy that would cease the unlawful conduct, as what happens in a typical mootness case. It can make the assurances mentioned in *Fikre I*, acknowledging that Fikre did not belong on the list and will not be placed on the list for the same reasons. Or it can explain why Fikre was removed from the list, thereby allowing the court to determine whether there is a reasonable chance that he will again be placed on the list for the same reasons (although doing so may not necessarily wipe out Fikre's reputational injury). But the Government cannot merely declare that it has voluntarily ceased its unlawful behavior without making any long-term changes to its policy or behavior that Fikre can rely on. Or, to put it succinctly, it is correct that the *Fikre* decisions have made it "nearly impossible" for the Court to moot the case by committing hallmark voluntary cessation. But that is the whole point of the voluntary cessation doctrine.

The Government also gestures towards "national security" (at 16-17 & 20-21) to suggest that the Panel's decision insufficiently deferred to the Government. But while the District Court may need to decide the appropriate level of deference to give the Government on remand (a question this Court need not address), national security is not a magic talisman allowing the Govern-

ment to avoid review of its actions entirely. Nor do the Government's national security claims affect Article III standing here. The Government has not cited to any case for the proposition that the Government's discretion on national security cases renders moot otherwise live cases. If anything, the fact that the Government has broad national security discretion—including the discretion to change its mind about national security issues and place Fikre back on the No Fly List without any changes in the factual record—further weigh against the Government in determining whether this case is moot.

## C. *Fikre II* did not reach the stigma-plus questions the Government complains about.

The Government separately asserts (at 18) that *Fikre II* created a circuit split with the Fourth Circuit on a doctrine known as stigma-plus. While a circuit split regarding stigma-plus claims exists, *Fikre II* does not implicate it. The Panel did not address what constitutes stigma-plus harm, and so the Government's disagreement with the Court's description of that harm rings hollow.

The stigma-plus test of *Paul v. Davis*, 424 U.S. 693 (1976) requires a plaintiff bringing a stigma-plus due process claim to show that it was stigmatized by the Government's disclosure of information as well as a change in status in connection with the disclosure. *Id*. at 711. Under the Ninth Circuit's interpretation of that test, the mere consulting of a list of stigmatized individuals, even by other government agencies, prior to providing a right or status quali-

fies: "[A] tangible burden also exists where the plaintiff can show that, as a practical matter, the law creates a framework under which agencies reflexively check the stigmatizing listing—whether by internal regulation or custom—prior to conferring a legal right or benefit." *Humphries v. Los Angeles*, 554 F.3d 1170, 1188 (9th Cir. 2009), *as amended* (Jan. 30, 2009*), rev'd on other grounds sub nom. Los Angeles v. Humphries*, 562 U.S. 29 (2010). In contrast, the Fourth Circuit requires mandatory consequences to individuals based on disclosures to third-party actors that are not the government. *Elhady v. Kable*, 993 F.3d 208, 226-227 (4th Cir. 2021); *see also Long*, 38 F.4th at 426-27 (applying *Elhady*).

The Government raises that split and argues that there are no stigma-plus harms caused by watchlist dissemination (at 18-19). But that argument goes to the merits of a stigma-plus claim, and *Fikre II* expressly declined to reach those merits. Slip Op. at 27-29. It simply left that question to be decided in the first instance on remand. So the Government's identified split is irrelevant to *Fikre II*.

The Government nevertheless tries to use that split to make an argument about Article III standing, claiming (at 19-22) that Fikre never had standing to challenge the Government's "initial decision" to place him on the No Fly

List.[2] Other than claiming that Fikre was not stigmatized by his placement (which goes to the merits of his claim, not Article III injury), the Government only hints at why he lacks standing, suggesting (at 20-21) that the initial decision is too stale to create standing, or (at 21) that there is no ongoing harm from placement, or (at 22) that it would harm national security (an issue that has nothing to do with standing).

Fikre has plainly suffered Article III injuries from his placement on the No Fly List. At the time Fikre brought the case, he was denied the ability to fly on a plane and was therefore stranded abroad. He was mistreated based on placement in other ways—including being persistently tortured by foreign governmenst to the extent that he sought asylum in Sweden—and remained unable to fly within U.S. airspace. These injuries are "fairly traceable" to Fikre's placement on the No Fly List "and likely to be redressed by a favorable judicial decision," so *Fikre II* correctly assumed Fikre had standing. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

Nor does *Long* suggest, as the Government claims (at 19-20), that the original placement decision is irrelevant to someone's No Fly List status. *Long* held that a plaintiff has standing to bring an as-applied challenge to his place-

---

[2] The Government appears to be focused in this argument on the Panel's Section 46110 analysis, Slip Op. at 22-26, though the Government does not directly challenge the Court's Section 46110 holding.

9

ment on the watchlist; if the Government removes the plaintiff from the watch-list during the pendency of the litigation, a court conducts voluntary cessation analysis. *See Long*, 38 F.4th at 423-425; *see also id.* at 424 (noting that removal absent an appropriate declaration would not moot any claims). After all, as Section II(A) below goes on to show, *Long* applied the same voluntary cessa-tion as the Panel. The only distinction between the two cases was how each panel interpreted the Government's differently-worded declarations in each case.

## II.  The panel's decision creates no conflict that warrants this Court's re-view.

### A.   *Long* presents at most a trivial circuit split.

The Government claims that this Court should review the Panel decision en banc because, shortly after the case was decided, a panel of the Fourth Cir-cuit disagreed with its outcome in *Long*. But *Long* expressly agreed with *Fikre II's* basic framework. It disagreed only with this Court's application of *Fikre II* to the narrow facts of its case. And its source of disagreement was even more limited in two ways.

Most prominently, *Long* and *Fikre II* interpreted two different declara-tions. In *Long*, the Fourth Circuit read the Herring Declaration to show"that the government has 'acquiesce[d] to the righteousness of [Long]'s contentions,' at least to some degree. While the government doesn't concede constitutional

error, we assume it removed Long from the list because, as he contends, he doesn't belong on it." *Id.* at 425 (brackets original and footnote omitted). The *Fikre II* Panel, on the other hand, read the Cartwright Declaration to have "double[d] down" against rather than "acquiesced to the righteousness" of Fikre's contentions. Slip Op. at 19.

Those divergent outcomes make sense because the two Declarations differ in crucial ways. The Cartwright Declaration states that "Plaintiff was placed on the No Fly List in accordance with the applicable policies and procedures" and removed "upon the determination that he no longer satisfied the criteria for placement on the No Fly List." ER 66. In contrast, in *Long*, the Herring Declaration stated merely that Long "has been removed from the No Fly List on an assessment of the currently available information" and "will not be placed back on the No Fly List in the future based on the currently available information." *Long v. Pekoske*, 20-1406, Dkt. 53, Supp. App. 15 (May 12, 2021). While Fikre maintains that *Long* was wrongly decided (and the Government maintains that *Fikre II* was wrongly decided), that two courts would interpret two different declarations differently does not create a circuit split.

*Long*'s only possible legal disagreement with *Fikre II* relates to the amount of deference to give the Government's declaration. *See Long*, 38 F.4th at 424 (asserting *Fikre II*'s "strict application of that standard under these cir-

cumstances demands too much of the government"). But *Long* does not point to any specific legal rule or standard applied by the Ninth Circuit with which the Fourth Circuit disagrees. Its discussion of *Fikre II* amounted to criticism of how the Ninth Circuit applied existing law to the particular facts before it, not a more fundamental disagreement with the relevant legal standard itself.

Moreover, in suggesting that *Fikre II* did not afford sufficient deference to the Government, *Long* apparently presumed that the Government would never remove someone from the No Fly List in order to moot a lawsuit, reasoning that such strategic decisionmaking would pose too great a risk to national security. 38 F.4th at 425. But the Government does that all the time. *See Long v. Pekoske*, Petition for Rehearing en Banc, Dkt. 80, at 9-12 (4th Cir. Aug. 15, 2022) (describing eight times in the past, including here, in which the Government removed someone from the No Fly List at the beginning or middle of litigation in order to moot a lawsuit). Given this history, it appears that the Government is willing to place and maintain people on the watchlist even when they pose no national security threat—so their subsequent removal does not, in fact, risk national security.[3]

_____

[3] Even if *Long*'s presumption was correct as a matter of fact, the presumption that the Government would never voluntarily cease behavior improperly runs contrary to the Ninth Circuit's voluntary cessation test, which must be met before a court grants the Government that presumption. *Bell v*, 709 F.3d at 898–99 & n.13.

Even despite these two disagreements, the Fourth Circuit held only that Long's as applied claims—that is, whether Long himself was validly on the No Fly List—were moot. 38 F.4th at 425 n.4. It left the district court to determine in the first instance whether Long's facial challenges to the No Fly List may proceed. *Id.* Since both *Long* and *Fikre II* primarily challenge the constitutionality and processes of the No Fly List rather than their particular applications to the plaintiffs, the facial challenges in both cases predominate over the as applied challenges.

So the supposed circuit split between *Fikre II* and *Long* is as narrow as narrow can be. The split boils down to a dispute over the interpretation of the precise language of two distinct declarations. The interpretation of those declarations arises only when the Government removes someone from the No Fly List in an attempt to moot their case. Even then, the dispute concerns only as applied, not facial, challenges to the No Fly List. The disagreement will emerge again only if the Government has a practice of avoiding litigation by removing people from the No Fly List and then issuing declarations designed to parrot what Government believes a court wants to hear in order to moot the case. And to the extent the Government does have such a mootness inducement policy for No Fly List challenges, that policy's existence only further proves that *Fikre II* got this supremely narrow circuit split right.

13

Of course, whether the Government can insulate the No Fly List from review by removing its challengers has implications for the litigants. But those implications exist only to the extent that the Court rejects the Government's assertions—precisely the question before the Court in this case—that it does not, in fact, have such a policy in the first place. And regardless of the implications for the individual litigants, this case has no important implications for the Court's jurisprudence as a whole. Even if it were incorrectly decided, it would not be worthy of en banc review.

### B. *Mokdad* and *Sossamon* not contrary to *Fikre*.

Meanwhile, there is no split with the Sixth Circuit. *Mokdad v. Lynch*, 876 F.3d 167 (6th Cir. 2017) held that the plaintiff on the watchlist could not obtain any relief because he sought only removal from the watchlist. *Id.* at 170-71. That is not the case here—Fikre seeks programmatic relief and vindication, among other changes. The Sixth Circuit further held that the voluntary cessation doctrine did not apply for the sole reason that "the government's actions were not voluntary." *Id.* at 171.

The Government suggests in a footnote that, if you look at *Mokdad* closely, it was as "voluntary" as any other voluntary cessation case. That is not what the Sixth Circuit held. Even if you accept the Government's argument, that means only that the *Mokdad* was incorrectly decided for reasons unrelated

to this Court's decision. Neither *Fikre I* nor *Fikre II* creates any sort of split with the Sixth Circuit.

Separately, as explained above in Section I(B), it remains possible for the Government to moot this case. It merely would have to do one of several things suggested in the *Fikre* decisions to show that the complained-of conduct is not likely to repeat. So the Government's perfunctory argument that the Panel's decision conflicts with *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), because the decision makes mootness "impossible," is also wrong.

### C. The Court should not take this case because of broader national security or government deference concerns.

While complaining about the Panel's decision, the Government asserts (at 16-17 & 20-21) that this case involves pressing national security concerns that require this Court to defer to the Government. The Government further (incorrectly) claims (at 15-16) that the Court's decision would make it impossible to moot No Fly List cases. As explained in Section I(B) above, these gestures towards national security interests do nothing to detract from the Panel's correct application of law in this case. For much the same reasons, they do not provide any exceptional reason to take this case en banc under Federal Rule of Appellate Procedure 35(a)(2).

### CONCLUSION

The Court should deny the Government's Petition.

September 20, 2022

*/s/ Lena F. Masri*
Lena F. Masri
Gadeir I. Abbas
Justin Sadowsky
Hannah Mullen
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE Washington, DC 20003
(202) 742-6420

Brandon Mayfield
LAW OFFICE OF BRANDON MAYFIELD, LLC
14631 SW Millikan Way Beaverton, OR 97003
Phone: 503.941.5101
mayfieldbrandon@hotmail.com
*Counsel for Yonas Fikre*
*Gadeir I. Abbas licensed to practice in Virginia only. Practice limited to federal matters.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the Federal Rules of Appellate Procedure and this Court's Order because it contains 3,585 words, excluding portions to be excluded under Federal Rule of Appellate Procedure 32, and because it was printed in 14 point Calisto MT Type using Microsoft® Word for Microsoft 365 MSO.

<u>/s/ Lena F. Masri</u>
Lena F. Masri